609 A.2d 400

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. IVAN SANCHEZ, DEFENDANT–APPELLANT.

Argued May 5, 1992—Decided July 23, 1992.

*Helen E. Szabo,* Designated Counsel, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney; *Helen E. Szabo* and *Ernest G. Ianetti,* Designated Counsel, on the briefs).

*Marsetta Lee,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

The issue is whether the admission into evidence of the uncounselled, post-indictment statement of defendant, Ivan Sanchez, violated his constitutional right to counsel. In an unreported opinion, the Appellate Division ruled that defendant's statement was admissible, and affirmed his conviction for noncapital murder (*N.J.S.A.* 2C:11–3a(1) and –3a(2)) and possession of a weapon for an unlawful purpose (*N.J.S.A.* 2C:39–4b). We granted defendant's petition for certification, 127 *N.J.* 546, 606 *A.*2d 361 (1991), and now reverse and remand to the Law Division.

–I–

According to the State, the underlying facts supporting the charges against defendant are that on December 16, 1986, the

victim, Robert Merkerson, and defendant engaged in a fight in which Merkerson knocked out one of defendant's teeth. Three days later defendant stabbed and killed Merkerson outside a bar in Passaic. On March 24, 1987, defendant was indicted for homicide and unlawful possession of a weapon.

Three months later, on June 26, Detective Howard Simbol of the Passaic Police Department, who was in charge of the investigation, learned that defendant was in custody on unrelated charges at Riker's Island Prison in New York. Detective Simbol drove to the prison with an arrest warrant to serve as a detainer. On the following day, Detective Simbol returned with Detective Thomas Mauro to interrogate defendant. The parties present sharply contrasting versions of that interrogation.

The detectives testified that they went to the "counsel room" at Riker's Island, where defendant was brought to them. After ascertaining that defendant could speak English, they advised him of his "*Miranda* rights," including his right to counsel. According to the officers, defendant then spontaneously stated: "I know why you are here." Pointing to his mouth, defendant said: "I had to get him back for this. He knocked my tooth out three days before I stabbed him." Detective Simbol testified that he then stopped defendant from saying anything further and asked defendant if he would consent to giving a written statement. Defendant consented, read a *Miranda* form, initialed each of the rights on that form, and signed the waiver. The detectives then proceeded with the interrogation. In a signed statement, Sanchez detailed the circumstances of the crime, including his departure to New York, and admitted stabbing Merkerson. The detectives conceded that at no time during the entire interview did they inform defendant that he had been indicted.

Apart from agreeing that the detectives did not inform him that he had been indicted, defendant's version of the interrogation conflicted with the State's. He testified that the detectives

never informed him of the subject of the interrogation, that they denied his request for an attorney, and that they neither read his *Miranda* rights to him nor provided him with an opportunity to read the waiver before signing it. He also denied stating that the victim had knocked out his tooth or that he had killed the victim because the victim had knocked out one of his teeth. Finally, he claimed that the detectives had coerced him into signing the waiver and the confession.

The trial court believed the detectives and denied defendant's motion to suppress the statements. The court found that defendant had given the statements willingly, had never requested an attorney, and had knowingly and voluntarily waived his *Miranda* rights. In addition, the court held that the detectives had not violated defendant's right to counsel, and found "absolutely no evidence" that the detectives knew whether defendant was represented by or had retained counsel. The court noted "the pivotal consideration in making the Constitutional inquiry was whether on being advised of his rights, the defendant indicated that he wanted the assistance of Counsel * * * and whether he wanted to have Counsel available or present before any interrogation took place."

The jury convicted defendant on both counts, and the court sentenced him to life with a thirty-year parole disqualifier. The Appellate Division affirmed.

–II–

■ The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." Although the Sixth Amendment, like the Fifth Amendment, guarantees the right to counsel in pretrial interrogation, the two guarantees serve different purposes. Generally speaking, the Fifth Amendment protects an accused from self-incrimination during police questioning, and the Sixth Amendment remedies the unfairness of that questioning when the

defendant is not represented. As when proving a waiver of constitutional rights generally, to prove a waiver of the right to counsel, the State must meet the heavy burden of showing that the defendant understood his or her right to counsel and knowingly, voluntarily, and intelligently relinquished it. *Brewer v. Williams*, 430 *U.S.* 387, 404, 97 *S.Ct.* 1232, .1242, 51 *L.Ed.*2d 424, 430 (1977).

The purpose of the Sixth Amendment right to counsel is to enable the defendant to confront the prosecution and to ensure the integrity of the judicial process. James J. Tomkovicz, *Standards for Invocation and Waiver of Counsel in Confession Contexts*, 71 *Iowa L.Rev.* 975, 980–81 (1986); Colin E. Fritz, Note, *Patterson v. Illinois: Applying Miranda Waivers to the Sixth Amendment Right to Counsel*, 74 *Iowa L.Rev.* 1261, 1266 (1989). For decades, the United States Supreme Court has recognized that the Sixth Amendment safeguards "fundamental rights of life and liberty" and ensures that an accused is provided representation at trial. *Johnson v. Zerbst*, 304 *U.S.* 458, 462, 58 *S.Ct.* 1019, 1022, 82 *L.Ed.* 1461, 1465 (1938). The right to counsel also attaches to pretrial stages and is triggered when "adversary judicial proceedings have been initiated." *Kirby v. Illinois*, 406 *U.S.* 682, 688–89, 92 *S.Ct.* 1877, 1881–82, 32 *L.Ed.*2d 411, 417 (1972). Denying the right to counsel in pretrial proceedings would reduce the trial to no more than an appeal from interrogation. *United States v. Wade*, 388 *U.S.* 218, 226, 87 *S.Ct.* 1926, 1931–32, 18 *L.Ed.*2d 1149, 1157 (1967); *Escobedo v. Illinois*, 378 *U.S.* 478, 487–88, 84 *S.Ct.* 1758, 1763, 12 *L.Ed.*2d 977, 984 (1964); *see Maine v. Moulton*, 474 *U.S.* 159, 170, 106 *S.Ct.* 477, 484, 88 *L.Ed.*2d 481, 492 (1985) ("to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself"). Until recently, the Court held that the Sixth Amendment right "does not depend upon a request by the defendant," *Brewer v. Williams*, 430 *U.S.* 387, 404, 97 *S.Ct.* 1232, 1242, 51 *L.Ed.*2d 424, 438 (1977), but now it apparently requires defendants to request counsel, *Patterson v. Illinois*,

487 *U.S.* 285, 290–91, 108 *S.Ct.* 2389, 2394, 101 *L.Ed.*2d 261, 271 (1988).

Unlike the Sixth Amendment, the Fifth Amendment does not expressly provide for the right to counsel. The Fifth Amendment right is a preventive measure that protects an accused from self-incrimination during police questioning. *Miranda v. Arizona*, 384 *U.S.* 436, 463–66, 86 *S.Ct.* 1602, 1622–24, 16 *L.Ed.*2d 694, 717–19 (1966). Its essential purpose is to prevent compelled self-incrimination. *Johnson v. New Jersey*, 384 *U.S.* 719, 729, 86 *S.Ct.* 1772, 1779, 16 *L.Ed.*2d 882, 890 (1966). The right arises during custodial interrogation and seeks to "insure that statements made in the government-established atmosphere are not the product of compulsion." *Miranda, supra,* 384 *U.S.* at 466, 86 *S.Ct.* at 1623, 16 *L.Ed.*2d at 719.

–III–

Until its decision four years ago in *Patterson, supra,* 487 *U.S.* 285, 108 *S.Ct.* 2389, 101 *L.Ed.*2d 261, the United States Supreme Court had consistently extended the protection of the Sixth Amendment right to counsel. In *Massiah v. United States*, 377 *U.S.* 201, 84 *S.Ct.* 1199, 12 *L.Ed.*2d 246 (1964), the defendant had been indicted, had retained a lawyer, and had been released on bail. Subsequently, a police investigator surreptitiously listened to the defendant's conversations and recorded his incriminating statements. The Court found that although the federal agents had not violated the defendant's Fifth Amendment rights, eliciting the statements "after he had been indicted and in the absence of his counsel" violated the "basic protection" of the Sixth Amendment. *Id.* at 206, 84 *S.Ct.* at 1203, 12 *L.Ed.*2d at 250; *see also United States v. Henry*, 447 *U.S.* 264, 274–75, 100 *S.Ct.* 2183, 2189, 65 *L.Ed.*2d 115, 125 (1980) (placing government informant in jail cell with defendant violated Sixth Amendment).

Next, in *Brewer, supra,* 430 *U.S.* at 404–06, 97 *S.Ct.* at 1242–43, 51 *L.Ed.*2d at 440–41, the Court ruled inadmissible incriminating statements made in response to the officer's comment that if the victim's body were located, she could receive a "Christian burial." It explained that the State bore a "heavy burden" of showing " 'an intentional relinquishment of a known right or privilege' " when seeking to establish that the defendant had effectively waived his right to counsel. *Id.* at 404, 97 *S.Ct.* at 1242, 51 *L.Ed.*2d at 439 (quoting *Zerbst, supra,* 304 *U.S.* at 464, 58 *S.Ct.* at 1023, 82 *L.Ed.* at 1466). Further, "[t]his strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pretrial proceedings." *Id.* at 404, 97 *S.Ct.* at 1242, 51 *L.Ed.*2d at 440. Noting that a judge had informed the defendant of his *Miranda* rights at arraignment, the Court nonetheless held that the defendant had not subsequently waived his Sixth Amendment right to counsel.

Later, in *Edwards v. Arizona,* 451 *U.S.* 477, 484–85, 101 *S.Ct.* 1880, 1885, 68 *L.Ed.*2d 378, 386 (1981), the Court held that once a defendant has asserted the Fifth Amendment right to counsel, police may not initiate questioning in the absence of counsel. *See Minnick v. Mississippi,* —— *U.S.* ——, ——, 111 *S.Ct.* 486, 491, 112 *L.Ed.*2d 489, 498 (1990) (clarifying *Edwards* to hold that "[w]hen counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney"). After *Edwards,* the Court extended that holding to a defendant's assertion of his Sixth Amendment right to counsel. *Michigan v. Jackson,* 475 *U.S.* 625, 106 *S.Ct.* 1404, 89 *L.Ed.*2d 631 (1986). The Court held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.* at 636, 106 *S.Ct.* at 1411, 89 *L.Ed.*2d at 642. The Court explained that "the Sixth Amendment right to counsel at a postarraignment interrogation requires at least as

much protection as the Fifth Amendment right to counsel at any custodial interrogation." *Id.* at 632, 106 *S.Ct.* at 1408–09, 89 *L.Ed.*2d at 639.

In a leading pre-*Patterson* case, the Second Circuit Court of Appeals found no waiver of the right to counsel by a defendant who knew that he had been indicted and who had been given *Miranda* warnings. *United States v. Mohabir,* 624 *F.*2d 1140 (2nd Cir.1980); *accord United States v. Clements,* 713 *F.*2d 1030, 1037 (4th Cir.1983) (suppressing confession of defendant who had been given *Miranda* rights but not told of indictment). *Contra United States v. Brown,* 569 *F.*2d 236, 238–39 (5th Cir.1978) (en banc) (reading *Miranda* rights to defendant in courtroom corridor without presence of appointed counsel results in valid waiver of Sixth Amendment right); *United States v. Monti,* 557 *F.*2d 899, 904 (1st Cir.1977) (making inculpatory statements after indictment and retention of counsel results in valid waiver of Sixth Amendment right); *United States v. Cobbs,* 481 *F.*2d 196, 199–200 (3rd Cir.) (permissible, after *Miranda* warnings, to interrogate defendant in custody without appointed counsel), *cert. denied,* 414 *U.S.* 980, 94 *S.Ct.* 298, 38 *L.Ed.*2d 224 (1973); *United States v. Springer,* 460 *F.*2d 1344, 1350–54 (7th Cir.) (uncounselled written confession and waiver of *Miranda* rights results in valid waiver of Fifth and Sixth Amendment rights), *cert. denied,* 409 *U.S.* 873, 93 *S.Ct.* 205, 34 *L.Ed.*2d 125 (1972); *Coughlan v. United States,* 391 *F.*2d 371, 372 (9th Cir.) (obtaining uncounselled confession from defendant who had been advised of *Miranda* rights results in valid waiver of Sixth Amendment right), *cert. denied,* 393 *U.S.* 870, 89 *S.Ct.* 159, 21 *L.Ed.*2d 139 (1968). The court noted that although immigration and naturalization service agents and an assistant United States attorney had told the defendant that he had been indicted, no one had explained to him the meaning of an indictment. *Mohabir, supra,* 624 *F.*2d at 1145, 1149. It reasoned that after an indictment, the defendant's "need for counsel is particularly acute," and "any questioning of the defendant by the government can only be 'for the purpose of

buttressing * * * a prima facie case.'" *Id.* at 1148 (quoting *People v. Settles*, 46 *N.Y.*2d 154, 412 *N.Y.S.*2d 874, 879, 385 *N.E.*2d 612, 616 (1978)). Continuing, the court stated that "after prosecution has begun, the right to obtain the assistance of counsel at all crucial stages is essential if both the symbol and reality of a fair trial are to be preserved * * *." *Id.* at 1149. It found that, notwithstanding the *Miranda* warnings, "[t]he record here suggests that appellant did not understand the gravity of his position; he apparently hoped that he would aid his case by telling 'his side of the story.'" *Ibid.* Finding the *Miranda* warnings to be insufficient, the court held "that the government failed to carry its heavy burden of proving that appellant's purported waiver satisfies the 'higher standard' that our cases have adopted in the Sixth Amendment context." *Id.* at 1151.

In *Patterson, supra,* 487 *U.S.* 285, 108 *S.Ct.* 2389, 101 *L.Ed.*2d 261, however, the Court changed direction. *See* William T. Pizzi, *Waiver of Rights in the Interrogation Room: The Court's Dilemma,* 23 *Conn.L.Rev.* 229, 252 (1991) ("Because *Patterson* seems so ad hoc in its reasoning, it is difficult to predict what the Court will find important or unimportant for waiver purposes in the future."); Samuel Rosenthal & Michelle A. Rice, *Whittling Away the Right to Counsel,* 3 *Crim.Just.* 2, 3 (Winter 1989) (principle inquiry of Court in Sixth Amendment cases during 1988 term was subjective determination of "whether the right will assist the criminal justice process to determine guilt or innocence"); Note, *Patterson v. Illinois: Applying Miranda Waivers to the Sixth Amendment Right to Counsel, supra,* 74 *Iowa L.Rev.* at 1262 (*Patterson* is "diversion" from the Court's previous bright-line rules protecting individual's Sixth Amendment right to counsel); John S. Banas, III, Case Comment, *Sixth Amendment—Waiver of the Sixth Amendment Right to Counsel at Post–Indictment Interrogation,* 79 *J.Crim.L. & Criminology* 795, 830 (1988) (majority's rationale "is erroneous because it fails to follow the underlying principles of precedent * * *"). The facts in *Patterson* were

that the defendant had been a member of a gang involved in two fights with another gang. In the second fight, a rival gang member had died. The defendant had been arrested, had waived his *Miranda* rights, and had given a statement to the police about the first fight, but had denied knowing anything about the victim's death. 487 *U.S.* at 287–88, 108 *S.Ct.* at 2392, 101 *L.Ed.*2d at 269.

While being transported to the county jail, the defendant learned that he had been indicted for murder. On learning that one member of his gang had not been indicted, he said: "Why wasn't he indicted, he did everything." 487 *U.S.* at 288, 108 *S.Ct.* at 2392, 101 *L.Ed.*2d at 269. A police officer gave the defendant a *Miranda* waiver form, which he initialed and signed. The defendant then gave an incriminating statement to the officer. Later that day, after receiving another *Miranda* warning, the defendant again confessed to his involvement in the murder. The trial court denied the defendant's motion to suppress his statements, and the jury convicted him.

A seriously divided Court rejected the defendant's argument that the Sixth Amendment barred the police from initiating post-indictment questioning until he had received the advice of counsel. The Court repudiated a distinction between an accused's pre-indictment Fifth Amendment right to counsel and the Sixth Amendment post-indictment right. It held that because the defendant had not asked for a lawyer, the police had not violated his right to counsel. 487 *U.S.* at 290–91, 108 *S.Ct.* at 2394, 101 *L.Ed.*2d at 271.

According to the Court, the issue was whether the defendant, by waiving his Fifth Amendment right to counsel, had also made a " 'knowing and intelligent' waiver of his Sixth Amendment right [to counsel]." *Id.* at 292, 108 *S.Ct.* at 2394, 101 *L.Ed.*2d at 272 (citing *Brewer, supra,* 430 *U.S.* at 404, 97 *S.Ct.* at 1242, 51 *L.Ed.*2d at 439, and *Zerbst, supra,* 304 *U.S.* at 464, 58 *S.Ct.* at 1023, 82 *L.Ed.* at 1466). The critical inquiry was whether "the accused, who waived his Sixth Amendment rights

during postindictment questioning, [was] made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel." *Id.* 487 *U.S.* at 292–93, 108 *S.Ct.* at 2395, 101 *L.Ed.*2d at 272. Rejecting the argument that a higher standard applied to a waiver of a Sixth Amendment right to counsel, the Court found that the *Miranda* warnings sufficed to support a waiver of the defendant's right to counsel. In reaching this result, the Court engaged in a "pragmatic" inquiry, and asked

what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage—to determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized. [*Id.* at 298, 108 *S.Ct.* at 2397, 101 *L.Ed.*2d at 276.]

That inquiry led the majority to conclude that

[t]he State's decision to take an additional step and commence formal adversarial proceedings against the accused does not substantially increase the value of counsel to the accused at questioning, or expand the limited purpose that an attorney serves when the accused is questioned by authorities. With respect to this inquiry, we do not discern a substantial difference between the usefulness of a lawyer to a suspect during custodial interrogation, and his value to an accused at postindictment questioning. [*Id.* at 298–99, 108 *S.Ct.* at 2398, 101 *L.Ed.*2d at 276.]

The four dissenting justices attached far greater significance to the indictment. *Id.* at 303–04, 108 *S.Ct.* at 2401, 101 *L.Ed.*2d at 279. They wrote:

"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." [*Id.* at 304, 108 *S.Ct.* at 2401, 101 *L.Ed.*2d at 280 (quoting *Kirby, supra,* 406 *U.S.* at 690–91, 92 *S.Ct.* at 1882, 32 *L.Ed.*2d at 417–18).]

Noting the "strong presumption against waivers," the dissent found the *Miranda* warnings inadequate to satisfy the defendant's Sixth Amendment right to counsel. The *Miranda* warn-

ings amounted to a "gross understatement of the disadvantage of proceeding without a lawyer and an understatement of what a defendant must understand to make a knowing waiver." *Id.* at 307–08, 108 *S.Ct.* at 2403, 101 *L.Ed.*2d at 282. The dissent concluded that "without a careful discussion of the pitfalls of proceeding without counsel, the Sixth Amendment right cannot be properly waived," and that "[a]n adversary party, moreover, cannot adequately provide such advice. Consequently, once the right to counsel attaches and the adversary relationship between the state and the accused solidifies, a prosecutor cannot conduct a private interview without 'dilut[ing] the protection afforded by the right to counsel.'" *Id.* at 310–11, 108 *S.Ct.* at 2404, 101 *L.Ed.*2d at 284 (quoting *Maine v. Moulton,* 474 *U.S.* 159, 171, 106 *S.Ct.* 477, 485, 88 *L.Ed.*2d 481, 493 (1985)).

*Patterson* may be distinguished on its facts from the present case. The defendant in *Patterson* knew of his indictment when he confessed to the police, but Sanchez did not know that he had been indicted when the detectives interviewed him. In a footnote, however, the *Patterson* Court declined to consider whether a waiver would be effective if the defendant did not know that he or she had been indicted, writing: "Because, in this case, petitioner concedes that he was so informed * * * we do not address the question whether or not an accused must be told that he has been indicted before a postindictment Sixth Amendment waiver will be valid * * *." 487 *U.S.* at 295 n. 8, 108 *S.Ct.* at 2396 n. 8, 101 *L.Ed.*2d at 274 n. 8. The Court's reservation of that question may be more apparent than real. *Patterson*'s holding is that *Miranda* warnings adequately alert an accused of the right to counsel and of the consequences of a decision to waive his or her Sixth Amendment rights during post-indictment questioning. 487 *U.S.* at 298, 108 *S.Ct.* at 2398, 101 *L.Ed.*2d at 276. "So long as the accused is made aware of the 'dangers and disadvantages of self-representation' during postindictment questioning, by use of the *Miranda* warnings, his waiver of his Sixth Amendment right to counsel at such questioning is 'knowing and intelligent.'" *Ibid.* That rationale

suggests that nothing more than *Miranda* warnings are required during post-indictment interrogation for defendants to make a knowing and intelligent waiver of their Sixth Amendment right to counsel. We are left with a feeling of uncertainty whether the factual distinction between *Patterson* and the present case makes a difference.

In several cases, we have concluded that the Sixth Amendment is more demanding than the Fifth Amendment. *See State v. Clausell*, 121 *N.J.* 298, 350–55, 580 *A.*2d 221 (1990) (noting distinction between waiver of Fifth and Sixth Amendment rights; finding no Sixth Amendment waiver had occurred because State failed to prove defendant had knowingly and intelligently waived right to counsel); *State v. Stein*, 70 *N.J.* 369, 383–86, 360 *A.*2d 347 (1976) (finding Fifth Amendment waiver valid, although no valid waiver of Sixth Amendment right); *State v. Porter*, 210 *N.J.Super.* 383, 389, 510 *A.*2d 49 (App.Div.) (noting different standards for Fifth and Sixth Amendment waiver; no Sixth Amendment violation from introduction of defendant-initiated post-indictment statements given after *Miranda* waiver when counsel had not yet been appointed), *certif. denied*, 105 *N.J.* 556, 523 *A.*2d 191 (1986). *But see State v. Darby*, 211 *N.J.Super.* 367, 373, 511 *A.*2d 1222 (App.Div.), *certif. denied*, 105 *N.J.* 559, 523 *A.*2d 192 (1986).

It now appears that we may have misperceived the relationship between those two amendments. *Patterson* states:

> While our cases have recognized a "difference" between the Fifth Amendment and Sixth Amendment rights to counsel, and the "policies" behind those constitutional guarantees, we have never suggested that one right is "superior" or "greater" than the other, nor is there any support in our cases for the notion that because a Sixth Amendment right may be involved, it is more difficult to waive than the Fifth Amendment counterpart. [487 *U.S.* at 297–98, 108 *S.Ct.* at 2397; 101 *L.Ed.*2d at 275.]

Thus, *Patterson* holds that after indictment, a defendant may waive his or her right to counsel under the Sixth Amendment as readily as under the Fifth Amendment.

–IV–

As we noted five years ago, "[t]his Court has frequently resorted to our own State Constitution in order to afford our citizens broader protection of certain personal rights than that afforded by analogous or identical provisions of the federal Constitution * * *." *State v. Novembrino*, 105 *N.J.* 95, 145, 519 *A.*2d 820 (1987). Although the language of article 1, paragraph 10 of the New Jersey Constitution is virtually identical with that of the Sixth Amendment, we have held in other contexts that the State Constitution affords greater protection of the right to counsel than is provided under the federal constitution. Those holdings constitute a body of pre-existing state law that informs our construction of the right to counsel as guaranteed by article 1, paragraph 10. See *Right to Choose v. Byrne*, 91 *N.J.* 287, 301, 450 *A.*2d 925 (1982) (holding "where a previously established body of state law leads to a different result, then we must determine whether a more expansive grant of rights is mandated by our State Constitution"); *State v. Hunt*, 91 *N.J.* 338, 365, 450 *A.*2d 952 (1982) (Handler, J., concurring) (identifying pre-existing body of state law as criterion for invoking state constitution). The holding in *Patterson* requires that we reconsider whether our traditional commitment to the right to counsel leads to a different result in this case. *See Hunt, supra*, 91 *N.J.* at 367, 450 *A.*2d 952 (indicating that a state's "traditions may also provide a basis for the independent application of its constitution"); *cf. State v. Williams*, 93 *N.J.* 39, 58, 459 *A.*2d 641 (1983) (exceptionally-vigorous judicial tradition in this state favors open judicial proceedings).

Historically, the guarantee of the right to counsel in the New Jersey Constitution antedates the adoption of the Sixth Amendment. For centuries, this State has highlighted the right to counsel. Consistent with the historical emphasis on that right, article 1, paragraph 10 of the New Jersey Constitution provides:

> In all criminal prosecutions, the accused shall have the right to a speedy and public trial by an impartial jury; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel in his defense.

That provision continues an earlier guarantee in article 1, paragraph 8 of the 1844 Constitution, which expressly provided that "[i]n all criminal prosecutions the accused shall have the right * * * to have the assistance of counsel in his defense."

So steadfast has been our commitment that we have secured the right to counsel in settings in which that right has not been assured by federal law. For example, the right to counsel of indigent defendants has "existed in this state since 1795—more than 150 years before the United States Supreme Court put the indigent's right to counsel on a federal constitutional basis * * *." *State in Interest of Antini*, 53 *N.J.* 488, 490–91, 251 *A.*2d 291 (1969). Indeed, this State recognized an indigent's right to counsel not only before the United States Supreme Court, but before any other state had recognized that right. *State v. Horton*, 34 *N.J.* 518, 522–23, 170 *A.*2d 1 (1961). In the context of multi-representation of defendants by a single attorney, we also have recognized that the law of this state provided an independent basis for the recognition of the right to counsel. To assure a defendant's right to counsel, we presumed prejudice from the potential conflict of interest arising from the representation of multiple defendants, although the United States Supreme Court required an actual conflict to establish prejudice. We wrote:

> We recognize that our rule amounts to an absolute bar to multiple representation unless defendants are fully advised of the potential problems involved. While other courts have not chosen to follow this route when interpreting the Sixth Amendment, we are convinced that it is necessary to give full meaning to our State constitutional guarantee of the effective assistance of counsel. [*State v. Belluci*, 81 *N.J.* 531, 546–47, 410 *A.*2d 666 (1980).]

Earlier, "to protect the proper interests of the defendant and to advance the sound administration of justice in our courts," we required the assignment of counsel for indigent defendants in municipal courts, although the United States Supreme Court

had not yet addressed the issue. *Rodriguez v. Rosenblatt*, 58 *N.J.* 281, 294, 277 *A.*2d 216 (1971). In sum, the state constitutional guarantee of the right to counsel and our duty to supervise criminal trials provide an independent basis for deciding whether the post-indictment administration of *Miranda* warnings establishes that a defendant's waiver of the right to counsel was knowing and intelligent.

To resolve the issue, we need not go so far as the New York Court of Appeals, which has held that "a criminal defendant under indictment and in custody may not waive his right to counsel unless he does so in the presence of an attorney." *Settles, supra,* 412 *N.Y.S.*2d at 879, 385 *N.E.*2d at 616. For example, a waiver may be valid if the defendant has been arraigned before a judicial officer who has advised the defendant "that he has been indicted, the significance of an indictment, that he has a right to counsel, and the seriousness of his situation in the event he should decide to answer questions of any law enforcement officers in the absence of counsel." *Mohabir, supra,* 624 *F.*2d at 1153.

■■ The return of an indictment transforms the relationship between the State and the defendant. By obtaining the indictment, the State represents that it has sufficient evidence to establish a *prima facie* case. Once the indictment is returned, the State is committed to prosecute the defendant. From that moment, if not before, the prosecutor and the defendant are adversaries. Questioning the accused can be only "for the purpose of buttressing * * * a prima facie case." *Settles, supra,* 412 *N.Y.S.*2d at 879, 385 *N.E.*2d at 616; *People v. Waterman,* 9 *N.Y.*2d 561, 216 *N.Y.S.*2d 70, 73–76, 175 *N.E.*2d 445, 447–48 (1961). The spotlight is on the accused. Under those circumstances, the perfunctory recitation of the right to counsel and to remain silent may not provide the defendant with sufficient information to make a knowing and intelligent waiver. *See United States v. Massimo,* 432 *F.*2d 324, 327 (2d Cir.1970) (Friendly, J., dissenting) ("there would seem to be

much ground for outlawing all statements resulting from post-arraignment of indictment interrogation * * * in the absence of counsel when the questioning has no objective other than to establish the guilt of the accused"). Such a recitation does not tell the defendant the nature of the charges, the dangers of self-representation, or the steps counsel might take to protect the defendant's interests. Those steps include pretrial motions such as those to test the sufficiency of the indictment or to suppress illegally-seized evidence. They also include the negotiation, subject to the approval of the court, of a plea agreement. Given the adversarial nature of their relationship, for the State's representatives to communicate adequately that information to an indicted defendant would be difficult, nigh to impossible. As a general rule, after an indictment and before arraignment, prosecutors or their representatives should not initiate a conversation with defendants without the consent of defense counsel.

Other considerations support that rule. The Rules of Professional Conduct (RPC) prohibit a prosecutor from seeking "to obtain from an unrepresented accused a waiver of important pretrial rights * * *." *RPC* 3.8. They also prevent a lawyer from communicating "about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." *RPC* 4.2. The implication of these rules is that after the return of an indictment, prosecutors and their representatives should not initiate conversations with an uncounselled defendant. That a defendant is indigent and awaiting assignment of counsel does not free the prosecutor to proceed with an otherwise-prohibited interrogation. As Professor Gillers states, the identity of the lawyer for an indigent defendant is known: it will be the Public Defender or designated counsel. Stephen Gillers, *Regulation of Lawyers* 92 (1992). Conduct of an interview with a defendant by an investigating officer may not insulate the prosecutor. Even if not accountable for the unauthorized conduct of

an investigating officer, a prosecutor should not ignore such conduct. *Rule* 3.8(e) of the American Bar Association's *Model Rules of Professional Conduct* (1992), although not part of *RPC* 3.8, provides that a prosecutor in a criminal case shall

[e]xercise reasonable care to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6 * * *.

Concerning a prosecutor's duty not to obtain waivers unless they are knowing, voluntary, and intelligent, Professor Hazard writes that *Rule* [8.4(a)] "makes it clear that a prosecutor may not escape this duty by directing or permitting others to act in his stead. That comment implies a duty to take affirmative steps to assure that the police do not coerce a defendant into making a confession or waiving important rights." Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* 696 (1992). Even if unprofessional conduct does not compel exclusion of illegally-obtained evidence, it can constitute an unfair practice that colors the determination whether a waiver of a right of counsel has been made knowingly and intelligently.

Finally, the State argues that because "evidence of defendant's guilt flowed overwhelmingly from the eyewitnesses' accounts of the murder, admission of his confession was harmless beyond a reasonable doubt." We disagree. The test for determining whether an error is harmless " 'is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Chapman v. California,* 386 *U.S.* 18, 23, 87 *S.Ct.* 824, 827, 17 *L.Ed.*2d 705, 710 (1967) (quoting *Fahy v. Connecticut,* 375 *U.S.* 85, 86–87, 84 *S.Ct.* 229, 230, 11 *L.Ed.*2d 171, 173 (1963)); *see R.* 2:10–2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result * * *."). Measuring the admission of defendant's uncounselled statement against that stringent standard, we are left uncertain whether the error may have contributed to defendant's conviction.

We hold that the post-indictment interrogation of defendant violated his right to counsel under article 1, paragraph 10 of the New Jersey Constitution. The trial court should not have admitted his confession into evidence. We also hold that the admission of that confession was not harmless error.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division.

*For reversal and remandment*—Chief Justice WILLENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.