**617 A.2d 281**

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. RICKY WATKINS, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 15, 1992—Decided November 30, 1992.

Before Judges KING, BRODY and THOMAS.

*Zulima v. Farber,* Public Defender of New Jersey, attorney for appellant (*William Welaj,* Designated Counsel, of counsel and on the brief).

*Ricky Watkins* filed a supplemental brief *pro se.*

*Andrew K. Ruotolo, Jr.,* Prosecutor of Union County, attorney for respondent (*Mark J. Panko,* Prosecutor's Agent, of counsel and on the letter brief).

The opinion of the court was delivered by

KING, P.J.A.D.

The critical issue in this appeal is whether a defendant's right to counsel was violated when the State, after indictment, attempted to secure damaging evidence against him by a ruse ostensibly designed to help him secure an alibi witness. This scenario is a modest variation on the "jail house informant" line of cases. We conclude that the State violated defendant's post-indictment right to counsel under Article 1, paragraph 10 of the State Constitution by this attempt to deliberately elicit incriminating information directly from defendant while he was represented by counsel, but without counsel present. The defendant's conviction for felony murder must be reversed.

A Union County jury found defendant guilty of felony murder and related offenses committed on September 2, 1988 in Elizabeth. Defendant and two cohorts were charged with beating, kidnapping and killing a companion, "Sam" Patel, near an industrial railroad siding next to the Pathmark grocery store. The State's principal witness was Roman Fernandez Borges, one of the three defendants. Borges pled guilty to kidnapping, received a 20–year sentence, and fully implicated

defendant in the murder at trial. The third defendant, Gilberto Valdes, pled guilty to murder but never testified at trial.

Defendant Watkins testified at trial. While admitting his presence at the scene, he testified that he personally was not involved in the crimes of kidnapping and murder of Patel. Defendant Watkins left town after the murder and was living in a trailer in a warehouse in Hudson County when he was arrested on November 3, 1988, two months after the crime. Defendant was held in the Union County jail in default of $100,000 bail. He was indicted on March 17, 1989.

Testimony at an *Evid.R.* 8 hearing held at trial but outside the jury's presence revealed these facts. William Jackson was arrested on charges unrelated to this case and held in the Union County jail during August 1989. Jackson had known defendant Watkins before this time and they began talking about their cases when they saw each other in jail. Jackson testified that Watkins wanted to know if Jackson knew anyone who could be an alibi witness for him. Jackson then looked through Watkins's discovery file and wrote down a phone number of one of the witnesses listed in Watkins's discovery file. Jackson eventually called the Union County Prosecutor's Office about Watkins's case and talked to a Sergeant Johnson.

On September 5, 1989 Jackson went to the Prosecutor's Office and gave a written statement about Watkins's comments to him in the jail. Apparently Jackson told the prosecutor's detectives that Watkins had confessed to the crime. Jackson then took two lie detector tests and failed both. Jackson testified a detective told him, "We can't use you as a witness if you fail two polygraphs."

At some point during their discussion, a detective arranged for Jackson to give Watkins a certain telephone number and to tell Watkins that the number would be that of a potential alibi witness for Watkins. This phone number was, in fact, that of Abdel Anderson, an investigator with the prosecutor's office.

When Jackson returned to the county jail, he gave Watkins the number and told him, "This is my cousin and he would be an alibi for you." The next day, on September 6, 1989, Watkins tried to call the number but at first got no answer. Jackson then made a call for him, got through, and put Watkins on the line. When Watkins took the phone, Jackson said that he "walked away" and "went back to my room."

Investigator Anderson tape-recorded the September 6, 1989 telephone conversation during which Watkins made statements indicating a consciousness of guilt because he was "involved in a murder" and asking for help in hiring an alibi witness even though "I was there when it happened." Trial began 20 days later on September 27, 1989. The judge ruled that a redacted version of the taped conversation could be admitted in evidence against Watkins without violating his federal constitutional Fifth and Sixth Amendments rights. We have reviewed the redacted and unredacted versions of the tape recording and their transcripts. Curiously, the redacted version actually sounds more harmful to the defendant than the unredacted one.

During his summation the trial prosecutor very effectively urged upon the jury the relevance of the taped telephone conversation between Investigator Anderson and Watkins on the issue of guilt. The only real issue at trial was the credibility contest between the State's key witness, Borges, and defendant, Watkins, regarding defendant's actual criminal involvement while at the scene of the underlying beating, kidnapping felony, and homicide. There is no doubt that the testimony about the taped conversation with Investigator Anderson had a critical impact on the defendant's claim of innocence.

We rest our decision that defendant's right to counsel was violated by the detective's ruse on State constitutional grounds alone, although the federal cases strongly point to the same result. In *State v. Sanchez*, 129 *N.J.* 261, 274, 609 *A.*2d 400 (1992), Justice Pollock said: "Although the language of Article 1, paragraph 10 of the New Jersey Constitution is

virtually identical with that of the Sixth Amendment, we have held in other contexts that the State Constitution affords greater protection of the right to counsel than is provided under the federal constitution." He added: "So steadfast has been our commitment that we have secured the right to counsel in settings in which that right has not been assured by federal law." *Id.* at 275, 609 *A.*2d 400. The issue in *Sanchez* was whether the defendant effectively waived the right against self-incrimination and the right to counsel post-indictment before the police interrogated him. The defendant in *Sanchez* did not know that he had been indicted.

The Supreme Court in *Sanchez* observed that "the return of an indictment transforms the relationship between the State and the defendant." *Id.* at 276, 609 *A.*2d 400. After indictment the defendant and the State are quite clearly adversaries. The defendant is represented by counsel. In the case before us, defendant was represented by designated counsel from the Office of the Public Defender. The Supreme Court said in *Sanchez* that "after the return of an indictment, prosecutors and their representatives should not initiate conversations with an uncounselled defendant." *Id.* We surely do not condone defendant's attempt to fortify his defense with a phoney alibi witness, but we cannot condone the prosecutor's covert post-indictment effort to get more evidence damaging to defendant's credibility for the imminent trial by direct contact with him. After defendant has counsel, the State cannot target him for further direct investigation through efforts deliberately designed to elicit harmful information from him personally to use against him at trial.

In *State v. Clausell*, 121 *N.J.* 298, 352, 580 *A.*2d 221 (1990), involving telephone conversations from jail by a defendant represented by counsel, the Court said, "even if the suspect initiates the contact with the police, the State remains bound to honor the right to counsel." In *Clausell*, the defendant even knew that he was speaking to a police officer when he made the

incriminating statements. This did not permit the statements' admissibility, absent a competent waiver of the right to have counsel present. We contrast this with the situation where the State secures the incriminating statement by chance, not by design. If the statement is obtained by luck and is not the product of a deliberate, investigative attempt to elicit evidence by means designed to circumvent and dilute the right to counsel, the statement is admissible. *State v. Bey*, 258 *N.J.Super.* 451, 471, 610 *A.*2d 403 (App.Div.), *certif. denied*, 130 *N.J.* 19, 611 *A.*2d 657 (1992).

Here the agents of the prosecutor's office, in alliance with Jackson, the fellow inmate, provoked a telephone call by defendant to Investigator Anderson in a disguised effort to enhance the State's case several weeks before the trial. This is not a so-called "listening-post" case. Investigator Anderson, through the overtures of inmate Jackson, was far more than a listening post. He and his cohorts were actively rooting around for useful information for the imminent trial. This is quite like *Massiah v. United States*, 377 *U.S.* 201, 84 *S.Ct.* 1199, 12 *L.Ed.*2d 246 (1964), where a defendant, free on bail, conversed with his codefendant while in the absence of his counsel and while sitting in the co-defendant's car, unaware that he had installed a radio transmitter accessible to government agents to listen in on them. The federal Supreme Court found this an intrusion on the Sixth Amendment right to counsel, saying:

> We do not question that in this case, as in many cases, it was entirely proper to continue an investigation of the suspected criminal activities of the defendant and his alleged confederates, even though the defendant had already been indicted. All that we hold is that the defendant's own incriminating statements, obtained by federal agents under the circumstances here disclosed, could not constitutionally be used by the prosecution as evidence against him at his trial. [377 *U.S.* at 207, 84 *S.Ct.* at 1203, 12 *L.Ed.*2d at 251].

The federal cases have continued a virtually unbroken line of authority denouncing such active intrusion once the criminal suspect has been indicted and is represented by counsel. *See Kuhlman v. Wilson*, 477 *U.S.* 436, 106 *S.Ct.* 2616, 91 *L.Ed.*2d 364 (1986); *Moran v. Burbine*, 475 *U.S.* 412, 106 *S.Ct.* 1135, 89

*L.Ed.*2d 410 (1986); *Maine v. Moulton,* 474 *U.S.* 159, 178–180, 106 *S.Ct.* 477, 497–498, 88 *L.Ed.*2d 481, 497–499 (1985); *United States v. Henry,* 447 *U.S.* 264, 100 *S.Ct.* 2183, 65 *L.Ed.*2d 115 (1980). *But see Patterson v. Illinois,* 487 *U.S.* 285, 108 *S.Ct.* 2389, 101 *L.Ed.*2d 261 (1988) (5–4 decision that *Miranda* warning adequate to protect Sixth Amendment rights where defendant knew police had initiated the conversation with him).

■ Finally, we reject the State's contention that any constitutional error was harmless beyond any reasonable doubt. The evidence secured through the violation of the defendant's right to counsel no doubt seriously struck at his credibility at trial. We can not overlook its impact.

Ironically, defendant's version that he was present but not involved in the murder might have been accepted as true by the jury if not for his clumsy attempt to contrive an alibi when tempted by Jackson's bait set out by the State.

Reversed.