**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3283-16T1

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

SANTOS MORALES,

      Defendant-Respondent.

_____

      Argued September 28, 2017 — Decided October 18, 2017

      Before Judges Simonelli, Haas and Gooden Brown.

      On appeal from Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 14-11-1205.

      Jennifer Paszkiewicz, Assistant Prosecutor, argued the cause for appellant (Scott A. Coffina, Burlington County Prosecutor, attorney; Ms. Paszkiewicz, of counsel and on the brief).

      Tamika T. McKoy argued the cause for respondent (McKoy Law Firm, LLC, attorneys; Ms. McKoy, on the brief).

PER CURIAM

By leave granted, the State appeals from a March 7, 2017[1] Law Division order barring the State from introducing expert testimony concerning defendant's use of marijuana in this vehicular homicide case. We reverse.

I.

At approximately 2:30 p.m. on June 24, 2012, defendant was driving his car westbound on Stage Road in Bass River Township. According to the driver of a car that was directly behind him, defendant was driving a few miles under the speed limit and slowed down as he approached the intersection of Stage Road and Greenish Road. From behind defendant's car, the other driver saw a woman driving a motorcycle eastbound on Greenish Road toward the intersection. Defendant then drove his car through the intersection to make a left-hand turn, directly across the path of the oncoming motorcycle, which struck defendant's car on its right side. The motorcyclist was thrown from her vehicle and sustained fatal injuries. The driver of the car that was behind defendant told the police that he saw the approaching motorcycle and anticipated the collision because defendant turned left just as the motorcycle entered the intersection.

---

[1] The file stamp on the trial court's order incorrectly states that the order was issued on March 7, 2016.

Defendant told the police he had consumed a twenty-two-ounce bottle of beer and a shot of cognac at approximately 11:00 a.m. The police charged defendant with careless driving and making an improper turn. The police also obtained blood samples from defendant at 4:21 p.m. on the day of the accident. The police sent the samples to the State Police Laboratory for analysis.

The State Police subsequently forwarded the blood samples to Dr. Richard D. Cohn, Ph.D., who worked at a private drug-testing company, for analysis and interpretation. Dr. Cohn has over forty-five years of experience as a forensic toxicologist and pharmacologist. He has also been qualified as an expert witness on the effect of marijuana ingestion on an individual's ability to drive in hundreds of cases in over twenty-five states, including New Jersey. Indeed, in an earlier case in the same vicinage where this accident occurred, the trial judge in this case permitted Dr. Cohn to testify "that the presence of . . . 15 [nanograms per milliliter (ng/ml)] of marijuana in one's system is sufficient to inhibit a person's ability to perform safety sensitive tasks" like driving a car. State v. Cintron, No. A-1342-11 (App. Div. Sept. 23, 2013) (slip op. at 7).

On November 21, 2012, Dr. Cohn issued a written report stating that the test of defendant's blood sample revealed defendant's delta-9-THC (THC) level was 14 ng/ml and his 9-Carboxy-THC

3                                                    A-3283-16T1

(Carboxy-THC) level was 225 ng/ml.[2] Dr. Cohn's report explained that an individual's THC level rises quickly following ingestion by smoking marijuana, and that peak levels are attained in a few minutes. The THC level then declines rapidly at first, and then declines more slowly. After approximately six hours, the individual's THC level will become undetectable. On the other hand, Carboxy-THC levels "rise more slowly, and persist longer, being routinely detectable for approximately [twenty-four] hours."

Dr. Cohn found that defendant's 14 ng/ml THC level in the blood sample taken almost two hours after the accident was highly significant. Based on his review of "decades [of] published data in forensic toxicology," Dr. Cohn opined that a concentration of THC in a person's blood that is over 10 ng/ml renders the person "unfit to perform safety sensitive tasks" like driving a car. Thus, Dr. Cohn stated that defendant's THC level of 14 ng/ml, combined with his high Carboxy-THC level, meant that defendant had ingested marijuana "in dosage amounts capable of producing [the drug's] pharmacological psychoactive effects, and thus, of

---

[2] Dr. Cohn testified that THC is the "active [and hallucinogenic] constituent" and "the psychoactive component of marijuana." Carboxy-THC is the "non-psychoactive constituent." In layperson's terms, the THC level determines how intoxicated the person is, while the Carboxy-THC level indicates when the individual may have ingested the drug.

rendering [defendant] unfit to safely operate a motor vehicle on the highway."[3]

On November 20, 2014, a Burlington County grand jury indicted defendant for second-degree vehicular homicide, N.J.S.A. 2C:11-5(a). In preparation for trial, the State asked Dr. Cohn to prepare a second written report. In his June 26, 2015 report, Dr. Cohn again concluded that the THC and Carboxy-THC

> concentration found in [defendant's] blood, together with the chronological history regarding the time between the car-motorcycle collision and acquisition of blood, are consistent with and indicative of the recent intake of . . . MARIJUANA in dosage amounts capable of producing its adverse pharmacological effects, and thereby impairing this individual's cognitive faculties and motor skills associated with his performance of safety sensitive tasks.
>
> In other words, the blood marijuana findings constitute an independent cause of impairment, and in the absence of other similarly or more competent causes are (a) corroborative of [defendant's] recent use of toxicologically significant amounts of Marijuana, and (b) high enough (based on the totality of circumstances) to have been causally related to the fatal motor vehicle collision.
>
> [(Emphasis added).]

---

[3] Dr. Cohn's testing did not reveal any "alcohols (including ethyl alcohol) or other volatile intoxicants" in defendant's blood.

Defendant thereafter moved to bar Dr. Cohn's expert reports and testimony at trial, and primarily alleged there was insufficient evidence to demonstrate that the specimen tested by Dr. Cohn was the same sample obtained from defendant by the police. Defendant also complained that Dr. Cohn did not provide copies of the published data he relied upon to form his opinion. However, this claim was addressed when the State provided defendant and the trial court with the supporting documents Dr. Cohn relied on following the Rule 104 hearing.

Testifying at the Rule 104 hearing, Dr. Cohn again opined that because defendant had 14 ng/ml THC in his system almost two hours after the accident, he had used a "sufficient amount of marijuana to have adversely affected his ability to perform safety sensitive tasks, including the operation of a motor vehicle safely" at the time of the accident. Defendant did not call an expert witness at the hearing to rebut Dr. Cohn's findings and opinions.

After defendant's attorney conducted a short cross-examination of Dr. Cohn, the trial judge extensively questioned the State's expert. In response to those queries, Dr. Cohn reiterated that his opinion was based upon his review of "many"[4]

---

[4] Dr. Cohn stated that "there's a myriad of . . . published documents in the scientific literature, peer reviewed documents in the scientific literature in both journals, peer review journals

published studies "address[ing] the relationship between marijuana ingestion and driving under the influence."

The judge also questioned Dr. Cohn about the last sentence of his report, where he summed up his conclusions. In that sentence, Dr. Cohn wrote that "in the absence of other similarly or more competent causes, [defendant's THC level] makes it reasonably certain that [defendant's] controlled substance abuse was at least casually, if not directly, related to the fatal crash[.]" (emphasis added). As noted above, Dr. Cohn used the word "causally" rather than the word "casually" one page earlier in his report to explain the connection between defendant's marijuana use and the accident. In response to the judge's questions, Dr. Cohn testified that his use of the word "casually" at the end of the report was a mistake, and he had not picked up this typographical error when he proofread the report.

After considering the parties' post-hearing submissions, the trial judge rendered a written decision granting defendant's motion to exclude Dr. Cohn's reports and testimony at trial. The

---

and in actual texts that discuss the various levels of THC and [C]arboxy-THC in blood and the interpretation therein." In response to the judge's questions, Dr. Cohn confirmed that these studies were "specifically related to driving." Indeed, Dr. Cohn told the judge that "we're not in a situation here where there's an absence of documentable information concerning circulating levels of marijuana and its ability to impair motor and cognitive functions."

judge first observed that the Legislature had enacted a statutory standard providing that a defendant who drives "with a blood alcohol concentration (BAC) of 0.08% or more by weight of alcohol" in his or her blood is guilty of driving while intoxicated. N.J.S.A. 39:4-50(a). However, the Legislature had not yet established a comparable standard for determining whether a defendant has driven under the influence of a narcotic drug like marijuana. Thus, the judge stated that "[t]he present case falls into the statute's undefined black hole."

The judge then cited several reasons for his determination that Dr. Cohn's testimony was insufficient to fill the void he perceived in the statute. Based upon his independent review of the scientific data that Dr. Cohn marshalled in support of his expert opinion, the judge opined that "there presently exist no precise scientific standards for measuring THC's influence on a person's inability to safely operate a motor vehicle." In support of this conclusion, the judge referred to his own interpretation of a "recent report" of the National Academy of Sciences, Engineering, and Medicine and stated that the committee that prepared the report "concluded that while there is an increased risk associated with cannabis use, there are no studies correlating its use to intoxication or driving while impaired." However, the judge ignored the report's ultimate conclusion that "[t]here is

substantial evidence of a statistical association between cannabis use and increased risk of motor vehicle crashes[,]" which is consistent with all of the studies Dr. Cohn considered in formulating his expert opinion.

The judge also stated that Dr. Cohn's second report lacked "conviction" and "scientific certainty" because he used the word "casually" rather than "causally" in the last sentence to explain the link between defendant's THC level and his unfitness to drive his car at the time of the accident. The judge noted that Dr. Cohn testified that he typed "casually" by mistake. However, the judge rejected that testimony based upon his conclusion that inserting the word "causally" in the sentence as Dr. Cohn intended "destroys the entire syntax of the sentence." The judge did not address Dr. Cohn's correct use of the word "causally" just one page earlier in the report. This appeal followed.

## II.

On appeal, the State argues that the trial judge mistakenly exercised his discretion by excluding Dr. Cohn's expert testimony. We agree.

We review a trial judge's decision to exclude expert testimony for abuse of discretion. Townsend v. Pierre, 221 N.J. 36, 52 (2015). N.J.R.E. 702 governs the admission of expert testimony. This rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Under N.J.R.E. 702, expert testimony is admissible when: (1) the intended testimony concerns matters "beyond the ken of the average juror"; (2) the field in question is at "a state of the art" such that the expert's testimony is sufficiently reliable; and (3) the witness has "sufficient expertise to offer the intended testimony." Kemp v. State, 174 N.J. 412, 424 (2002) (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 413 (1992)).

Dr. Cohn's proposed testimony concerning the effects of defendant's THC level on his ability to safely operate an automobile met the first prong of the N.J.R.E. 702 test because it was obviously "beyond the ken of the average juror." Kemp, supra, 174 N.J. at 424. The trial judge also found that "Dr. Cohn's expertise as a toxicologist is evident[,]" thus satisfying the third prong of the test.

However, the judge found that the second prong of the test was not met because Dr. Cohn's proposed testimony was not scientifically reliable. As the Supreme Court held over twenty-five years ago in Rubanick v. Witco Chem. Corp., a theory of causation "may be found to be sufficiently reliable [and therefore

admissible under N.J.R.E. 702] if it is based on a sound, adequately-founded scientific methodology involving data and information of the type reasonably relied on by experts in the scientific field." 125 N.J. 421, 449 (1991).

In determining the soundness of the proposed expert's methodology, the Court cautioned trial judges not to "directly and independently determine as a matter of law that a controversial and complex scientific methodology is sound. The critical determination is whether comparable experts accept the soundness of the methodology, including the reasonableness of relying on this type of underlying data and information." Id. at 451. Thus, a trial judge should not "independently review[]" the studies relied upon by the expert, or make his or her own determination as to scientific reliability of those studies. Ibid. Instead, "[t]he proper inquiry is whether comparable 'experts in the field [would] actually rely' on that information." Id. at 452 (alteration in original) (quoting Ryan v. KDI Sylvan Pools, Inc., 129 N.J. 276, 289 (1990)).

More recently, the Court reiterated that while trial judges should "act as gatekeepers to the proper admission of expert testimony, we do not expect [them] to investigate sua sponte the extent to which the scientific community holds in esteem the particular analytical writings or research that a proponent of

testimony advances as foundational to an expert opinion." Hisenaj v. Kuehner, 194 N.J. 6, 16 (2008) (citing Rubanick, supra, 125 N.J. at 451). Instead, the Court stated that "[i]t falls to the parties at trial, who are positioned best to gather and analyze the viability of an expert's proffered testimony, [and] to highlight the strengths and shortcomings of the foundation for that testimony so that the trial court can reach an informed admissibility decision." Ibid.

Applying these principles, we conclude the trial judge mistakenly applied his discretion in finding that Dr. Cohn's proposed testimony did not meet the second prong of the N.J.R.E. 702 test. Dr. Cohn's opinion that a person who has over 10 ng/ml of THC in their blood may not safely operate an automobile was not based on new or novel scientific theories, methodologies, or studies. As Dr. Cohn testified, his opinion was derived from information contained in "decades [of] published data in forensic toxicology" as viewed through the lens of his significant expertise in this highly specialized field.

In addition, Dr. Cohn previously provided similar expert testimony in hundreds of cases across the country, including New Jersey. The defense did not provide any expert testimony of its own to contradict Dr. Cohn's opinions.

A-3283-16T1

In determining that Dr. Cohn's opinion was nevertheless not scientifically reliable under N.J.R.E. 702, the judge mistakenly conducted his own independent search of the scientific literature and focused on a single study which he believed contradicted Dr. Cohn's opinion. By doing so, the judge failed to follow the Supreme Court's admonitions in Rubanick and Hisenaj that trial courts should leave the gathering of scientific research to the parties. Moreover, the study the judge relied upon actually concluded that "[t]here is substantial evidence of a statistical association between cannabis use and increased risk of motor vehicle crashes."

The judge's remaining criticisms of Dr. Cohn's expert report are also unavailing. The judge correctly noted that N.J.S.A. 39:4-50 permits the State to establish a prima facie case that a driver is driving under the influence of alcohol if the driver's BAC is .08% or higher, but does not set a comparable standard for cases where the driver is under the influence of marijuana. However, this observation is of no moment because even in the absence of a blood test, the State has always been permitted to submit lay and expert testimony on the issue of whether a driver was under the influence of a drug. State v. Bealor, 187 N.J. 574, 585-86 (2006). Indeed, the Court has stated that "expert testimony

A-3283-16T1

remains the preferred method of proof of marijuana intoxication." Id. at 592.

Finally, Dr. Cohn's opinions were stated in terms that were sufficiently "certain" and "definitive" to allow their admission in evidence at trial. Dr. Cohn's first report clearly stated that the THC levels found in defendant's blood rendered him "unfit to safely operate a motor vehicle on the highway." In his more detailed, second report, Dr. Cohn opined that defendant's THC level was "high enough (based on the totality of circumstances) to have been causally related to the fatal motor vehicle collision." Dr. Cohn's testimony at the Rule 104 hearing was stated with equal conviction.

The judge's contrary conclusion was based upon his finding that Dr. Cohn intended to opine there was only a "casual" connection between defendant's drug use and the accident, based upon Dr. Cohn's use of the word "casually" instead of "causally" in the last sentence of his second report. We normally defer to a trial judge's credibility findings because trial judges have the opportunity to see and hear the witnesses testify. State v. Locurto, 157 N.J. 463, 470-71 (1999). However, where a judge's finding is "so wide of the mark that a mistake must have been made[,]" we do not apply the same deference. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B.

Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div.), certif. denied, 117 N.J. 165 (1989)).

Here, the judge made no mention of the fact that Dr. Cohn's use of the word "casually" in the last sentence of the report was completely inconsistent with his testimony throughout the hearing that there was a causal connection between defendant's THC level and the accident. He also failed to mention that Dr. Cohn had specifically used the word "causally" just one page earlier in the report to describe the correlation between defendant's ingestion of marijuana and the fatal collision. Thus, we are constrained to reject the judge's finding on this point.

In sum, the judge mistakenly barred the State from presenting the expert testimony of Dr. Cohn at trial. We therefore reverse the judge's decision and remand for appropriate proceedings.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION