STATE OF HAWAI'I, Plaintiff–Appellee, v. **ALFRED LIULAMA**, also known as "Freddy," Defendant–Appellant, and **WILDON AHANA, WALLACE FO**, also known as "Wally," **ROLLEN PADELLO**, also known as "Rolley," Defendants.

NO. 15505

(CR. NO. 89–1614)

DECEMBER 18, 1992

BURNS, C.J., HEEN, AND WATANABE, JJ.

448

449

OPINION OF THE COURT BY HEEN, J.

The dispositive issue in this appeal by Defendant–Appellant Alfred Liulama (Defendant) from his June 27, 1991 judgment of conviction for the offenses of Unlawful Imprisonment in the Second Degree, Hawai‘i Revised Statutes (HRS) § 707–722 (1985), Theft in the Fourth Degree, HRS § 708–833 (Supp. 1991), and Hindering Prosecution in the First Degree, HRS § 710–1029 (1985), is whether the circuit court erred in denying his pre–trial motion to suppress incriminating statements he made to police officers following his arrest under a grand jury indictment. We conclude from our examination of the record that the lower court

erred. Therefore, we vacate the judgment and remand for a new trial.

On October 4, 1989, the body of one Charles Pregill (Pregill) was discovered on Sand Island. Several days later, officers of the Honolulu Police Department (HPD), acting on information imparted to them by one Rhonda Antone (Antone), began looking for Defendant and other individuals whom they suspected as perpetrators of the abduction of Pregill and Antone and the murder of Pregill.[1]

On October 17, 1989, the grand jury indicted Defendant on charges of kidnapping,[2] robbery in the first degree,[3] and hindering prosecution in the first degree. On October 20, 1989, Defendant was arrested by police officer Joseph Self (Self) at Defendant's girl friend's home. Although the arrest was effected on the basis of the arrest warrant that followed the indictment, Self did not have a copy of the warrant with him at the time. On the way to the police station, Self told Defendant that "all he had to do was tell the truth."

At the police station, Defendant was given a copy of the arrest warrant; however, it does not appear that the police officers told him that he was indicted. When Defendant asked what was going to happen to him, he was told that no one could help him if they didn't know what he knew.

Defendant was interrogated by Detectives Rufus Kaukani (Kaukani) and Andrew Glushenko. Prior to questioning Defend-

---

[1] This case arises from the same events as *State v. Ahana*, 9 Haw. App. ___, 829 P.2d 860 (1992), and *State v. Fo*, 9 Haw. App. ___, 836 P.2d 510 (1992), which we decided by memorandum opinions on April 23, 1992, and August 3, 1992, respectively.

[2] The kidnapping charge was for Defendant–Appellant Alfred Liulama's (Defendant) alleged role in the abduction of Charles Pregill.

[3] The robbery in the first degree charge was allegedly committed by Defendant against Rhonda Antone.

ant, Kaukani gave him a copy of HPD form 81, used by police officers to inform individuals being subjected to a custodial interrogation that they have a constitutional right to refuse to answer any questions put to them, that they are entitled to have an attorney present during the interrogation, and that an attorney will be appointed by the court if they cannot afford one. The form 81 also informs those individuals that whatever they say can be used against them in further proceedings. Defendant read the form, stated that he understood his rights, indicated on the form that he did not wish to have an attorney, and signed it. Defendant then gave the first of two inculpatory statements concerning the offenses charged against him. After an intervening polygraph test, Defendant gave the second statement.

Defendant filed a pre–trial motion to suppress (Motion) the two statements. After an evidentiary hearing, the lower court entered findings of fact, conclusions of law, and an order denying the Motion. The court found that Defendant was informed of all his applicable rights, including his right to counsel, before he made the two statements and before the polygraph test was administered. The court concluded that,

> [a]lthough this was a "critical stage," all that was required
> was that Defendant be told he had the right to counsel;
> there was no requirement that a counsel actually be present unless Defendant asserted his right to counsel.

On appeal, Defendant argues that the form 81 advised him only that he was entitled to have an attorney present during the interrogation to protect his right against self–incrimination under the fifth amendment to the United States Constitution.[4] He contends that since he had already been indicted, he had the right to an

---

[4] Article I, section 10 of the Hawai'i State Constitution provides the same protection to the citizens of the state.

attorney under the sixth amendment and article I, section 14 of the Hawai'i State Constitution; however, neither the police nor the form 81 advised him of his right to counsel under either the sixth amendment or article I, § 14.[5] He argues, therefore, that he did not knowingly and intelligently waive his right to counsel under the latter two constitutional provisions.[6]

The issue, then, is whether a person who has been arrested on the basis of an indictment and was advised of and waived his right to counsel under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), but was not advised that he has the right to counsel under the sixth amendment and article I, section 14, has also knowingly and intelligently waived his right to counsel under those two constitutional provisions.[7]

---

[5] In nearly identical language, the sixth amendment to the United States Constitution and article I, section 14 of the Hawai'i State Constitution guarantee an accused the right to assistance of counsel for his or her defense.

[6] We are satisfied from the record that Defendant's alleged waiver in this case was voluntary.

[7] The fifth amendment does not specifically provide for assistance of counsel. One writer notes that it is more correct to refer to the "right" to counsel under the fifth amendment as an "entitlement" to the assistance of counsel to protect an individual against abridgement by the government of the individual's right against compulsory self–incrimination. J. Tomkovicz, *Standards for Invocation and Waiver of Counsel in Confession Contexts*, 71 Iowa L. Rev. 975 (1986). The sixth amendment right to counsel, on the other hand, is specifically provided for and was created by the constitutional framers to provide equality between the government and the accused in a criminal case. *Id.*

By guaranteeing counsel the Framers afforded the accused an equalizing presence intended to prevent outcomes more dependent upon might than right. Counsel balances the scales by contributing legal knowledge, expertise, and training and by fortifying with a commitment to the accused's best interests. Counsel, thus, is the *sine qua non* of fairness in our adversary system.

at 981 (footnotes omitted).

The United States Supreme Court considered the question in *Patterson v. Illinois*, 487 U.S. 285, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988), which was before the Supreme Court on a *writ of certiorari* issued to resolve a split among the lower courts on the question. *Id.* 487 U.S. at 289, 108 S. Ct. at 2393, 101 L. Ed. 2d at 270. A five–member majority of the Supreme Court, over the vigorous dissent of the remaining four justices, held that an accused who, during a postindictment interrogation following his arrest, has been fully advised of his constitutional rights in accordance with *Miranda v. Arizona, supra,* has been sufficiently apprised of the nature of his right to counsel under the sixth amendment.[8] No additional warnings or discussions with the accused regarding his sixth amendment right to counsel are required, and a waiver by the accused of his *Miranda* right to counsel also constitutes a waiver of his sixth amendment right to counsel during the interrogation.

---

[8] In a dissent joined by Justices Brennan and Marshall, Justice Stevens noted that the constitutional right to counsel arises once formal criminal proceedings are begun. Justice Stevens contended that after that step has been taken there are ethical constraints preventing a prosecutor from giving legal advice to an unrepresented adversary and, therefore, it should be impermissible for the prosecutor or his or her agents to conduct private interviews with the accused. Justice Stevens asserted that given the adversarial relationship created by the formal proceedings, it would be "quite wrong to suggest that *Miranda* warnings — or for that matter, any warnings offered by an adverse party — provide a sufficient basis for permitting the undoubtedly prejudicial — and, in my view, unfair — practice of permitting trained law enforcement personnel and prosecuting attorneys to communicate with as–of–yet unrepresented criminal defendants." *Patterson v. Illinois,* 487 U.S. 285, 301, 108 S. Ct. 2389, 2399, 101 L. Ed. 2d 263, 278 (1988).

In a separate dissent, Justice Blackmun stated that he would merely hold that after formal adversary proceedings against a defendant have begun the sixth amendment mandates that the defendant not be interrogated by the authorities until counsel has been made available to him, unless the defendant himself initiates communications, exchanges, or conversations with the police. 487 U.S. at 300, 108 S. Ct. at 2399, 101 L. Ed. 2d at 277.

After such a waiver, any statement made by the accused during the interrogation is admissible in evidence against him.

The Supreme Court held that there is no difference between a postindictment interrogatee and a preindictment interrogatee, since both have the right to counsel during questioning, and noted that had the petitioner requested counsel the interrogation would have ceased. The Supreme Court further held that the *Miranda* warnings made the petitioner aware that he had the right to counsel during the questioning and of the consequences of waiving his sixth amendment right, *i.e.*, that any statement he made would be used against him. The Supreme Court pointed out that it has

> defined the scope of the right to counsel by a pragmatic assessment of the usefulness of counsel to the accused at the particular proceeding, and the dangers to the accused of proceeding without counsel. An accused's waiver of his right to counsel is "knowing" when he is made aware of these basic facts.
>
> Applying this approach, it is our view that whatever warnings suffice for *Miranda*'s purposes will also be sufficient in the context of postindictment questioning. The State's decision to take an additional step and commence formal adversarial proceedings against the accused does not substantially increase the value of counsel to the accused at questioning, or expand the limited purpose that an attorney serves when the accused is questioned by authorities. With respect to this inquiry, we do not discern a substantial difference between the usefulness of a lawyer to a suspect during custodial interrogation, and his value to an accused at postindictment questioning.

487 U.S. at 298, 108 S. Ct. at 2398, 101 L. Ed. 2d at 276.

We are bound to follow *Patterson*'s interpretation of the right to counsel under the sixth amendment. *See State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1971). However, citing *Santiago*,

Defendant urges us to hold that he did not knowingly and intelligently waive his right to counsel under article I, section 14. In *Santiago*, our supreme court stated that nothing prevents the Hawai'i State Constitution from providing greater protection for criminal defendants than those in the United States Constitution.

In considering a situation similar to this case, the Supreme Court of New Jersey extended its state constitution's guarantee of counsel beyond the protection of the sixth amendment. *State v. Sanchez*, 129 N.J. 261, 609 A.2d 400 (1992). The pertinent facts in *Sanchez* are that three months after the defendant was indicted for murder in New Jersey, he was visited by New Jersey detectives while he was in custody on Riker's Island in New York on unrelated charges. There, the defendant was advised of his rights in accordance with *Miranda* and gave the detectives a statement incriminating himself in the murder. The *Sanchez* court observed that *Patterson* was a change of direction by the United States Supreme Court, noting that in a number of prior decisions the Supreme Court had extended the right to counsel to postindictment interrogation situations and had not required a showing that the accused had requested counsel.

Prior to *Patterson*, the Supreme Court had extended the constitutional right to counsel to pretrial proceedings not literally within the terms of the sixth amendment guarantee. "The basis for that extension was the legitimate concern that equalization at trial could prove to be an empty gesture if the government could take advantage of an unequal accused in earlier phases." J. Tomkovicz, *Standards for Invocation and Waiver of Counsel in Confession Contexts*, 71 Iowa L. Rev. 975, 982 (1986) (footnote omitted).

> Law enforcement attempts to secure incriminating statements from an accused are among the informal pretrial phases to which the Court has extended sixth amendment protection. According to current doctrine, however, not all governmental efforts to gain confessions are

within the scope of the counsel guarantee. The two threshold elements of the right to counsel in confession contexts are: (1) deliberate governmental elicitation of statements (2) after the initiation of formal judicial proceedings. Those requirements stem from the literal language of the Constitution and the perceived purposes of sixth amendment counsel.

*Id.* at 983 (footnotes omitted).

The New Jersey Supreme Court in *Sanchez* acknowledged *Patterson* as controlling the sixth amendment waiver question; however, the court also noted that it had frequently resorted to the New Jersey Constitution in order to afford its citizens "broader protection of certain personal rights than that afforded by analogous or identical provisions of the federal Constitution[,]" and stated that "the state constitutional guarantee of the right to counsel and [the Court's] duty to supervise criminal trials provide an independent basis for deciding whether the postindictment administration of *Miranda* warnings establishe[s] that a defendant's waiver of the right to counsel was knowing and intelligent." 129 N.J. at 274, 609 A.2d at 407.

The *Sanchez* court observed that once an indictment has been returned, the relationship between the state and the defendant becomes adversarial. The state has established that it has a *prima facie* case and is committed to prosecution. Interrogation of the accused at that point can only be for the purpose of buttressing the state's case.

> Under those circumstances, the perfunctory recitation of the right to counsel and to remain silent may not provide the defendant with sufficient information to make a knowing and intelligent waiver .... Such a recitation does not tell the defendant the nature of the charges, the dangers of self–representation, or the steps counsel might take to protect the defendant's interest. Those steps

include pretrial motions such as those to test the sufficiency of the indictment or to suppress illegally–seized evidence. They also include the negotiation, . . . of a plea agreement. Given the adversarial nature of their relationship, for the State's representatives to communicate adequately that information to an indicted defendant would be difficult, nigh to impossible. *As a general rule, after an indictment and before arraignment, prosecutors or their representatives should not initiate a conversation with defendants without the consent of defense counsel.*

*Id.* at 276–77, 609 A.2d at 408 (emphasis added). Additionally, the *Sanchez* court noted that the prosecutor, as counsel for the government, cannot ethically question the defendant, and the police as agents for the prosecutor, are under the same restraint. The New Jersey Supreme Court held that the police interrogation violated the defendant's right to counsel under the New Jersey Constitution.

Our supreme court also, when considering the rights afforded to criminal defendants under the Hawai'i State Constitution,

[has] not hesitated to "extend the protections of the Hawai'i Bill of Rights beyond those of textually parallel provisions in the Federal Bill of Rights when logic and sound regard for the purposes of those protections have so warranted."

*State v. Miyasaki*, 62 Haw. 269, 280, 614 P.2d 915, 922 (1980) (quoting *State v. Kaluna*, 55 Haw. 361, 369, 520 P.2d 51, 58 (1974)). Our supreme court has held that the state constitution is to be construed

not in total disregard of federal interpretations of identical language, but with reference to the wisdom of adopting those interpretations for our state[,]

*State v. Manzo*, 58 Haw. 440, 452, 573 P.2d 945, 953 (1977), and with due regard for the intent of the framers of the document and

the people adopting it; the fundamental principle is to give effect to that intent. *State v. Kam*, 69 Haw. 483, 492, 748 P.2d 372, 377 (1988).

In this case, the State concedes that Defendant had the right to counsel under article I, section 14, at the time he was interrogated; however, the State argues that Defendant knowingly and intelligently waived his right to counsel when he acknowledged his awareness of his *Miranda* right to counsel and executed the form 81. We disagree.

The right to counsel is undoubtedly subject to a knowing, intelligent, and voluntary waiver. *State v. Dicks*, 57 Haw. 46, 549 P.2d 727 (1976) (citing *Johnson v. Zerbst*, 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 2d 1461 (1938)). The question is whether Defendant can be held to have knowingly and intelligently waived his right to counsel under article I, section 14, where he was not informed of that right. For the reasons that follow, we hold he cannot.

First, we agree generally with the reasoning of the *Sanchez* court that there is a substantial enough difference between the circumstances of a preindictment and a postindictment interrogatee so that the latter's constitutional right to counsel must be accorded heightened protection.

Second, it is fundamental that

> [c]ourts are most solicitous to assure an accused adequate legal representation and guardingly indulge in a strong presumption against waiver of this fundamental right. *Johnson v. Zerbst*, 304 U.S. 458, 464[, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 1466] (1938).

*Wong v. Among*, 52 Haw. 420, 424, 477 P.2d 630, 633 (1970).

Accordingly, we have established stringent requirements governing a trial court's decision on a defendant's request to waive counsel in a criminal case and proceed *pro se*. *State v. Dickson*, 4 Haw. App. 614, 673 P.2d 1036 (1983).

The trial court should first examine the particular facts and circumstances relating to the defendant, such as the defendant's age, education, mental capacity, background and experience, and his conduct at the time of the alleged waiver. This is necessary to allow the trial court to determine the level and depth to which its explanation and inquiry must extend.

Secondly, in order to fully assure that the defendant is informed of the risks of self–representation, the trial court should make him aware of the nature of the charge, the elements of the offense, the pleas and defenses available, punishments which may be imposed, and all other facts essential to a broad understanding of the whole matter.

Finally, the trial court should inform the defendant: of his right to counsel, whether private or appointed; that self–representation is detrimental to himself; that he will be required to follow all technical rules and substantive, procedural, and evidentiary law; that the prosecution will be represented by able counsel; that a disruption of the trial could lead to vacation of the right to self–representation; and that if voluntary self–representation occurs, the defendant may not afterward claim that he had inadequate representation.

The trial judge is not required to give the defendant a short course in criminal law and procedure, since a defendant's technical legal knowledge is not relevant to an assessment of his knowing exercise of the right to defend himself. However, the record should reflect some interchange on the above matters such as will indicate to a reviewing court that the defendant knew and understood the dangers and disadvantages of self–representation.

*Id.* 4 Haw. App. at 619–20, 673 P.2d at 1041–42 (citations omitted).

Additionally, the Hawaiʻi Rules of Penal Procedure (HRPP) (1988) carefully and specifically set forth the means by which an accused's right to counsel is protected by the courts. Under Rules 10.1(c) and (d), HRPP, respectively, a defendant who appears for the first time in a criminal proceeding in the circuit court must be (1) advised of his right to counsel, and (2) allowed reasonable time and opportunity to consult with counsel.

Also, Rule 5(a), HRPP, requires the police to take a person arrested on a warrant before the district court without unnecessary delay. In the district court, the judge, in both felony and non–felony cases, is required to advise the defendant, *inter alia*, of his rights under Rule 10.1HRPP. Rules 5(b)(1) and (c)(1), HRPP.

The Hawaiʻi Supreme Court has also stated:

> [T]he trial court's duty to appoint counsel "is not discharged by an assignment at such time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." Thus, the representation afforded a defendant must be one of substance not form. The right to the assistance of counsel must not be an illusory guarantee.

*State v. Kane*, 52 Haw. 484, 486, 479 P.2d 207, 209 (1971) (quoting *Powell v. Alabama*, 287 U.S. 45, 71, 53 S. Ct. 55, 65, 77 L. Ed. 158, 172 (1932)).

A defendant's decision to waive counsel and answer questions put to him by the police in a postindictment interrogation is tantamount to a decision to proceed *pro se*. It follows that, since our law requires the courts to carefully assure itself of the accused's awareness of the circumstances of his situation, his right to counsel, the value of counsel, and the dangers of proceeding without counsel before allowing the accused to proceed *pro se* in the courts, the courts should also be required to ensure that an accused had that same level of awareness at the time he allegedly waived his right to counsel prior to a postindictment interrogation during which he

gave an incriminating statement to the police. Absent such a requirement, the government can effectively circumvent the constitutional guarantee and thwart defense counsel's ability to adequately represent defendant and prepare for trial. If an accused may be interrogated by the police without having been fully advised of his right to counsel under article I, section 14, the right to counsel would indeed be rendered illusory and nugatory. To support a knowing waiver at such a critical stage, the advice accorded to an accused regarding his rights under article I, section 14 should not be narrower in scope or substance than the advice the courts are required to give. *Miranda* warnings do not satisfy that requirement.[9]

In light of the purpose of the right to counsel and the protection accorded the right by the law of this state, we do not believe the government should be allowed to conduct a postindictment interrogation until the accused has been specifically advised of such right by a court or by his own counsel. Logic and sound regard for the purposes of article I, section 14, as exemplified by case law and the HRPP, favor the extension of the protection of article I, section 14, beyond that of the sixth amendment as expressed in *Patterson*. We do not believe that the pragmatic approach expressed by the *Patterson* court is in keeping with the importance attached by the Hawai'i Supreme Court to the right to counsel under article I, section 14, as indicated above.

Accordingly, we hold that where an accused has been arrested and interrogated by the police and has not been specifically advised by a court or by his own counsel that he has the constitu-

---

[9] We do not agree, as Defendant argues, that in a postindictment interrogation, the police should be required to advise the accused as extensively as the court. Such an approach, entailing as it does a layman's advice on legal principles, carries countless dangers. Moreover, since the prosecutor cannot advise the accused of his or her rights, the police, as agents of the government should not do so in these circumstances. *See State v. Sanchez*, 129 N.J. 261, 609 A.2d 400 (1992).

tional right to counsel at every stage of the proceeding following that arrest, he cannot be held to have knowingly and intelligently waived that right, and any statements made by him to the police absent such advice are inadmissible.

As further protection against any erosion of the right to counsel, we adopt the general rule announced in *Sanchez* that after a person has been indicted, and before he or she has been arraigned, the government should not initiate a conversation with the defendant concerning the charges against him without the consent of defense counsel.[10]

In light of the requirement that the police take a person arrested under a warrant before the district court without unnecessary delay, Rule 5(a), HRPP, we do not believe the rule we establish will unduly burden or hinder the efforts of the police or the prosecution, for it must be remembered that where an indictment has been returned the police have already established a *prima facie* case against the accused.

On the record in this case, we would violate the intent of article I, section 14, if we were to hold that Defendant had knowingly and intelligently waived his right to counsel. When Defendant was arrested, the police had a *prima facie* case not only against him, but against every other co–defendant named in the indictment. Other participants in the kidnappings had already informed the police of Defendant's alleged role in the offenses charged in the indictment. Instead of being advised of his right to counsel under article I, section 14, he was advised to "tell the truth" and that no one could help him if they didn't know what he knew.[11] Thereafter, he was not

---

[10] In *People v. Settles*, 46 N.Y.2d 154, 412 N.Y.S.2d 874, 385 N.E.2d 612 (1978), the court held that once an indictment has been returned, the accused may not waive the right to counsel except in the presence of the accused's counsel.

[11] Defendant was not told what kind of help could or would be afforded him.

merely interrogated, he was given a polygraph test. The purpose of the interrogation and the polygraph test can only have been to extract a "true" confession. Under those circumstances, Defendant's need for counsel extended beyond the immediate question of whether or not Defendant should answer the questions put to him. Moreover, if Defendant had "flunked" the polygraph test, would the police have ended the interrogation? We think not.

At oral argument, the State contended that even if it was error to admit Defendant's statements into evidence, the error was harmless in light of the entire evidence. However, the point was not raised in the State's answering brief. Matters not raised in the briefs will not ordinarily be considered by the appellate court. *See Quality Furniture, Inc. v. Hay*, 61 Haw. 89, 92 n.4, 595 P.2d 1066, 1068 n.4 (1979).

> The purpose of briefs and arguments is to present to the court in concise form the points and questions in controversy, and by fair argument on the facts and law of the case, to assist the court in arriving at a just and proper conclusion, *and to notify opposing counsel of the questions to be presented and the authorities relied on in reference thereto.*

5 Am. Jur. 2d *Appeal and Error* § 684 (1962) (emphasis added). The State's failure to present the argument in its answering brief deprived Defendant of the opportunity to respond in his reply brief. Moreover, since the error was a violation of Defendant's constitutional right, it is presumed prejudicial and the State had the burden of showing that it was harmless beyond a reasonable doubt. *State v. Messamore*, 2 Haw. App. 643, 639 P.2d 413 (1982).

Nevertheless, we have carefully examined the record in this case and conclude that the error was not harmless beyond a reasonable doubt. In his statement to the police, Defendant said he had helped tie Pregill's feet so that Pregill could be taken away from the scene where he was first detained. At least three of the State's

witnesses corroborated Defendant's statement. However, defense counsel was able on cross–examination to raise several matters attacking the credibility of those witnesses. In that light, we cannot conclude that Defendant's statement did not contribute to his conviction.

## CONCLUSION

The judgment of conviction is vacated and this matter is remanded to the lower court for a new trial.

*Keith S. Shigetomi* (Shigetomi and Thompson, of counsel) for defendant–appellant.

*Patricia A. Loo*, Deputy Prosecuting Attorney, City and County of Honolulu, for plaintiff–appellee.