IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 49 MAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at 720 MDA 2019 dated 1/10/20 |
| | : | affirming judgment of sentence of the |
| v. | : | Lycoming County Court of Common |
| | : | Pleas, Criminal Division, at No. CP-41- |
| | : | CR-89-2017 dated 4/5/19 |
| | : | |
| JORDAN ADONIS RAWLS, | : | |
| | : | |
| Appellant | : | ARGUED:  March 10, 2021 |

*OPINION*

**JUSTICE SAYLOR**                                    **DECIDED:  August 17, 2021**

This appeal concerns whether law enforcement agents violated the Sixth Amendment to the United States Constitution when, although issuing *Miranda* warnings to an arrestee during an interrogation, they failed to specifically apprise him that criminal charges already had been filed against him.

In October 2016, Appellant and Joseph Coleman perpetrated a home-invasion robbery in Williamsport, during which Kristine Kibler and her son, Shane Wright, were shot and killed.  An accomplice, Casey Wilson, served in the role of a getaway driver.

Police investigated and garnered evidence giving rise to probable cause to believe that Appellant participated in the crimes, and a complaint charging him with two counts of criminal homicide and related offenses was filed.  Shortly thereafter -- after learning that his picture was circulating in the media in association with the killings -- Appellant

voluntarily presented himself at a police station to address what he initially depicted to the agents as the "crazy nonsense" he had heard. Transcript of Audio/Video Recording dated Nov. 11, 2016, in *Commonwealth v. Rawls*, No. CR-89-2017 (C.P. Lycoming) [hereinafter, "A/V Recording"], at 11. Appellant was immediately placed under arrest.

While shackled, Appellant was interrogated by agents for a period of five-and-one-half hours. At the outset, the lead investigator related to Appellant his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). Among other things, he was told of his entitlement to be represented by an attorney during questioning and warned that anything that he said could and would be used against him in a court of law. *See* A/V Recording at 5. Appellant orally waived his rights and signed a written waiver form. He was also specifically admonished that: he was under arrest; he wasn't free to leave; the agents were investigating the criminal homicides that had appeared in the news; and they had probable cause to obtain a warrant for his arrest. *See id.* at 7. The agents, however, did not specifically advise Appellant that charges already had been lodged against him.

During the interrogation, Appellant initially denied knowing Coleman or Wilson and pervasively lied about his whereabouts before, at, and after the time of the home invasion. The agents repeatedly confronted him with contrary evidence, including video-surveillance footage showing the three co-perpetrators together in various locations, as well as phone records documenting extensive contacts, in relevant time frames. Ultimately, Appellant admitted that he was present at the crime scene when the robbery and homicides were committed, but he professed to having been unarmed, claiming to have served "basically like . . . the lookout." *Id.* at 236.[1]

---

[1] Later that day, Appellant was taken before a magisterial district judge, who denied bail. The Commonwealth refers to the bail proceeding as a preliminary arraignment; however,

Appellant filed a pretrial motion seeking to suppress evidence of the interview. In one line of argumentation, he contended that, in the totality of the circumstances, his incriminatory statements were the product of inappropriate police tactics entailing deception, manipulation, and psychological coercion, thus invalidating his *Miranda* waiver per the Fifth Amendment. *See* Brief in Support of Omnibus Motion dated June 1, 2018, in *Commonwealth v. Rawls*, No. CR-89-2017 (C.P. Lycoming), at 8-9, 14-23. *See generally Dickerson v. U.S.*, 530 U.S. 428, 433-34, 120 S. Ct. 2326, 2330-31 (2000) (discussing the due-process-related background pertaining to the voluntariness of confessions, and the incorporation of the Fifth Amendment's self-incrimination clause).

In the second line of his presentation, which gives rise to the legal question now before this Court, Appellant asserted that the agents violated his Sixth Amendment rights when they failed to inform him that criminal charges already had been filed against him. It was his position that, without such information, the waiver of his rights could not be deemed to have been knowing and intelligent. *See generally Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079, 2085 (2009) (discussing the knowing-voluntary-and-intelligent litmus associated with a waiver of the Sixth Amendment right to counsel).[2]

---

the docket inconsistently reflects that a preliminary arraignment was otherwise scheduled for a later time (and Appellant ultimately waived formal arraignment).

Subsequent to the bail proceeding, the agents conducted a second, shorter interview with Appellant. At that time, he again admitted his knowing participation in the robbery but maintained that he hadn't entered the victims' residence.

[2] The Commonwealth suggests -- and its *amicus*, the District Attorneys Association argues -- that an accused's Sixth Amendment right to counsel doesn't attach merely on account of the filing of criminal charges, but rather, only arises upon a preliminary arraignment. *See* Brief for *Amicus* District Attorneys Ass'n at 10. Particularly given the vagueness of the present record in terms of whether and when a preliminary arraignment as such occurred, *see supra* note 1, and our ultimate disposition favorable to the Commonwealth, we elect to adhere to the question presented by Appellant and selected for review by this Court.

After conducting a hearing, the suppression court found that Appellant had rendered a valid waiver of his right to counsel after receiving appropriate *Miranda* warnings.[3] Regarding the totality assessment, the court found nothing to indicate that he was incapable of understanding the rights explained to him and no evidence that the agents threatened, tricked, or cajoled him. *See Commonwealth v. Rawls*, CR-89-2017, *slip op.* at 5-6, 8-9 (C.P. Lycoming Aug. 13, 2018).

As to the Sixth Amendment right to counsel, the court explained that, under the prevailing jurisprudence of the Supreme Court of the United States, when an accused voluntarily waives his *Miranda* rights, he also waives his Sixth Amendment right to counsel. *See id.* at 5-6 (citing, *inter alia*, *Patterson v. Illinois*, 487 U.S. 285, 293-94, 108 S. Ct. 2389, 2395-96 (1988)); *accord Commonwealth v. Woodard*, 634 Pa. 162, 195-97, 129 A.3d 480, 500-01 (2015) (treating a *Miranda* waiver as also encompassing a waiver of the Sixth Amendment right to counsel). Regarding the present circumstances, the court reasoned:

> [Appellant] was admittedly aware that the incident [for] which he was wanted for questioning in connection to was the shooting death of two people. [Appellant] arguably understood the gravity of his arrest due to this knowledge. Further, [Appellant] was informed of the rights afforded to him and the consequences of abandoning such rights but chose to waive them regardless.

*Id.* at 6.

At trial, the Commonwealth presented testimony from Wilson, pursuant to a plea agreement, describing in detail his own involvement in the events, as well as that of

---

[3] When a suspect makes a statement during custodial interrogation, the burden rests upon the government to show that the defendant knowingly, voluntarily, and intelligently waived his rights. *See, e.g.*, *J.D.B. v. N.C.*, 564 U.S. 261, 269-70, 131 S. Ct. 2394, 2401 (2011) (citing, *inter alia*, *Miranda*, 384 U.S. at 444, 475-76, 86 S. Ct. at 1612, 1628-29).

Appellant and Coleman, and depicting Appellant as the shooter.[4]  Other corroborative testimony and evidence was admitted, and an audio-visual recording of Appellant's incriminatory interview with the agents was played for the jurors.  Appellant was found guilty of first- and second-degree murder relative to the two victims, respectively, as well as other crimes, and he was sentenced to life in prison.

On appeal, the Superior Court adopted the suppression court's opinion, and we allowed this appeal, limited to the following issue as framed by Appellant:

> Whether police, to protect a person's sixth amendment rights, must do more than administer *Miranda* warnings when the person is subject to police custodial interrogation and police deliberately fail to disclose that criminal charges have already been filed?

*Commonwealth v. Rawls*, ___ Pa. ___, 237 A.3d 976 (2020) (*per curiam*).[5]  In his presentation to this Court, Appellant relies substantially on *Patterson v. Illinois* to vindicate

---

[4] Wilson maintained that he remained outside the residence when the home invasion was perpetrated by Appellant and Coleman.  Accordingly, he testified that he didn't see the shootings -- but he explained that Coleman had already exited when the shots were fired from the interior, while Appellant still remained inside.  *See* N.T., Apr. 1, 2019, at 142.

[5] In his brief, Appellant continues to suggest that various interrogation techniques employed by the agents involved deception and coercion.  We agree with the Commonwealth, however, that, per the above formulation of the question presented, the issue before this Court is limited to whether the Sixth Amendment imposes a *per se* prohibition against custodial interrogation of an individual who has been charged with a crime, in the absence of a disclosure that such charges have been filed.  *See* Brief for Appellee at 11 (explaining that Appellant "is asking the court to adopt a bright-line rule that invalidates an otherwise valid Sixth Amendment waiver if police deliberately fail to tell the arrestee: 'we have filed charges against you'").

The issue that Appellant has presented also incorporates an assertion of deliberateness, on the agents' part, in their failure to disclose the charges.  The suppression court rendered no factual finding of intentionality or deliberateness, however, and there is no direct evidence of it on the record.  Accordingly, and given that we view the suppression record in the light most favorable to the Commonwealth, as the prevailing party, *see,*

his position that disclosure of the filing of criminal charges is essential. Like the suppression and intermediate courts, however, the Commonwealth takes the view that *Patterson* militates strongly to the contrary.

In the divided opinion in *Patterson*, a majority of the Supreme Court of the United States rejected the argument that -- because the defendant's Sixth Amendment right to counsel had attached prior to the time that he was questioned by police officers -- his uncounseled confession couldn't be knowing and intelligent, and therefore, it should be suppressed. In this regard, the majority determined that the issuance of *Miranda* warnings made the defendant sufficiently aware, in "sum and substance," of his right to have an attorney present during questioning and the possible consequences of foregoing this entitlement. *Patterson*, 487 U.S. at 292-93, 108 S. Ct. at 2395.

In the course of the decision, the majority recognized the distinction between the rights to counsel under the Fifth and Sixth Amendments. *See generally Montejo*, 556 U.S. at 786-87, 129 S. Ct. at 2085 (explaining that the Fifth Amendment provides the right to counsel at custodial interrogations; whereas, the sometimes overlapping Sixth Amendment right encompasses the assistance of counsel during at least certain post-indictment interrogations). But, according to the *Patterson* majority, the Supreme Court has defined the scope of the right to counsel "by a pragmatic assessment" of counsel's usefulness and the danger presented to a defendant choosing to proceed uncounseled.

___

*e.g.*, *Commonwealth v. Worthy*, 598 Pa. 470, 477, 957 A.2d 720, 724 (2008), were our review to turn on the deliberateness concern, Appellant simply could not prevail. *Cf. Moran v. Burbine*, 475 U.S. 412, 423, 106 S. Ct. 1135, 1142 (1986) ("In light of the state-court finding that there was no 'conspiracy or collusion' on the part of the police, we have serious doubts about whether the Court of Appeals was free to conclude that their conduct constituted 'deliberate or reckless irresponsibility.'" (citation omitted)). For this reason, and giving Appellant the benefit of the doubt, we assume that the deliberateness aspect is incidental to his core contention that an arrestee must be advised of pending charges to support a valid waiver of his right to counsel under the Sixth Amendment.

*Patterson*, 487 U.S. at 298, 108 S. Ct. at 2398. In this respect, the *Patterson* majority viewed Fifth and Sixth Amendment entitlements -- relative to post-indictment interrogation -- as substantially overlapping.

Thus, the majority opined that warnings that are sufficient for purposes of the Fifth Amendment decision in *Miranda* will also generally suffice for Sixth Amendment purposes. *See id.* Along these lines, the majority explained:

> The State's decision to take an additional step and commence formal adversarial proceedings against the accused does not substantially increase or decrease the value of counsel to the accused at questioning, or expand the limited purpose that an attorney serves when the accused is questioned by authorities. With respect to this inquiry, we do not discern a substantial difference between the usefulness of a lawyer to a suspect during custodial interrogation, and his value to an accused at postindictment questioning.

*Id.* at 298-99, 108 S. Ct. at 2398; *cf. Moran*, 475 U.S. at 421-22, 106 S. Ct. at 1141 (stressing the efficacy of *Miranda* warnings for Fifth Amendment purposes and opining, more broadly, that "[e]vents occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right").

In a dissent supported, for the most part, by three other Justices, Justice Stevens took issue with the majority's decision to downplay the significance of the commencement of formal adversary proceedings. The dissent stressed the strong presumption against waiver of Sixth Amendment protections and opined that the filing of charges substantially alters the relationship between the government and the accused in a way that warrants additional protection. *See id.* at 306-07, 108 S. Ct. at 2402 (Stevens, J., dissenting). It was the dissent's position that warnings offered by an opposing party (*i.e.*, government representatives) cannot convey a full awareness of the disadvantages of self-

representation. *See id.* at 307, 108 S. Ct. at 2403-04. Further, the dissent regarded the majority's reliance on bare *Miranda* warnings to convey the advantages of an attorney's presence and the downsides of foregoing counsel as "a gross understatement of the disadvantage of proceeding without a lawyer and an understatement of what a defendant must understand to make a knowing waiver." *Id.* at 307-08, 108 S. Ct. at 2403. In sum, the dissent portrayed the majority decision as effecting a substantial dilution of essential Sixth Amendment protections.

Presently, Appellant's approach to *Patterson* is first to highlight its recognition of differences in the application of the Fifth and Sixth Amendment rights. *See* Brief for Appellant at 14 ("[T]here will be cases where a waiver which would be valid under *Miranda* will not suffice for Sixth Amendment purposes." (quoting *Patterson*, 487 U.S. at 296 n.9, 108 S. Ct. at 2397 n.9)). Appellant also points to the factual distinction between his case and *Patterson* -- in that the defendant there had been apprised that criminal proceedings had been commenced against him -- and the Supreme Court's concomitant decision to defer from expressly deciding the question presented here. *See Patterson*, 487 U.S. at 295 n.8, 108 S. Ct. at 2396. The clear purport of *Patterson* which Appellant understates, however, is its "pragmatic" recognition of a general rule that "whatever warnings suffice for *Miranda*'s purposes will also be sufficient in the context of postindictment questioning." *Patterson*, 487 U.S. at 297, 108 S. Ct. at 2398.[6]

Next, Appellant overtly relies on core themes from the *Patterson* dissents. *See* Brief for Appellant at 15, 19. It should go without saying, however, that this Court, by virtue of the Supremacy Clause of the United States Constitution, is obliged to apply majority decisions of the United States Supreme Court in addressing

---

[6] It is also noteworthy that the *Patterson* majority characterized the desirability of informing an accused that he has been indicted as "a matter that can be reasonably debated." *Patterson*, 487 U.S. at 295 n.8, 108 S. Ct. at 2396 n.8.

federal constitutional issues, unless and until such decisions are overruled by that Court. *See Commonwealth v. Gibson*, 597 Pa. 402, 421 n.8, 951 A.2d 1110, 1121 n.8 (2008) ("[W]e fail to see the benefit of challenging principles embodied in presently prevailing High Court decisions by way of expressions of agreement with the dissents."). And far from being overruled, *Patterson*'s general rule was roundly embraced by the subsequent majority decision in *Montejo*. *See Montejo*, 556 U.S. at 798-99, 129 S. Ct. at 2092 ("[A]s we held in *Patterson*, the *Miranda* warnings adequately inform [a defendant] 'of his right to have counsel present during questioning,' and make him 'aware of the consequences of a decision by him to waive his Sixth Amendment rights[.]'" (citation omitted)).

In *Patterson*'s aftermath, the United States Court of Appeals for the Second Circuit overruled its previous rulings that, in order to effectively waive the right to counsel during post-indictment questioning, an accused must have been informed of his indictment. *See U.S. v. Charria*, 919 F.2d 842, 846-48 (2d Cir. 1990) (explaining that "*Patterson*'s pragmatic approach supersedes previous rulings of this circuit which, based on the concept of a hierarchy of constitutional rights, called for a higher 'knowing and intelligent' standard for sixth amendment waivers than for other waivers"). Significantly, as stressed by the Commonwealth, all federal circuit courts of appeals that have addressed this issue have rejected Appellant's position.[7]

Indeed, the Commonwealth asserts that no jurisdiction in the United States has ever held, after *Patterson*, that the Sixth Amendment requires an arrestee to be apprised of pending charges. *See* Brief for Appellee at 15, 19-20. Appellant's sole response is to

---

[7] *See U.S. v. Bryson* 110 F.3d 575, 582 (8th Cir. 1997); *U.S. v. Muca*, 945 F.2d 88, 89 (4th Cir. 1991); *U.S. v. Charria*, 919 F.2d 842, 846 (2d Cir. 1990); *Riddick v. Edminston*, 894 F.2d 586, 590-91 (3d Cir. 1990); *Norman v. Ducharme*, 871 F.2d 1483, 1487 (9th Cir. 1989); *Quadrini v. Clusen*, 864 F.2d 577, 585-87 (7th Cir. 1989).

point to two decisions of state courts decided under their respective state constitutions. According to Appellant, these decisions comprise "compelling[ly] analogous case authority." Reply Brief for Appellant at 5.

The Commonwealth, however, aptly distinguishes these decisions, explaining that both courts understood that *Patterson*'s rationale "suggests that nothing more than *Miranda* warnings are required during post-indictment interrogation for defendants to make a knowing and intelligent waiver of their Sixth Amendment right to counsel." *State v. Sanchez*, 609 A.2d 400, 406 (N.J. 1992); *accord State v. Liulama*, 845 P.2d 1194, 1200 (Haw. 1992); *see also* Brief for Appellee at 20-21. Indeed, it was precisely because these courts concluded that the prevailing Sixth Amendment jurisprudence of the Supreme Court of the United States disapproves -- or at least militates strongly against -- a requirement that arrestees must be apprised of pending charges that both state courts proceeded to consider whether greater protection was accorded by their state constitutions. *See Sanchez*, 609 A.2d at 407-09; *Liulama*, 845 P.2d at 1200-04. The question presented to this Court, however, is expressly limited to the federal constitutional one, and accordingly, we have no basis similarly to consider a departure from the federal norms based on the Pennsylvania Constitution.

Separate and apart from *Patterson*, Appellant references a series of law review articles in support of his position. The view of most of the commentators in this vein, however, squarely aligns with that of the *Patterson* dissent. *See, e.g.* Eve Brenski Primus, *Disentangling Miranda and Massiah*: *How to Revive the Sixth Amendment Right to Counsel as a Tool for Regulating Confession Law*, 97 B.U.L. REV. 1085, 1090 (2017) ("By failing to consider the underlying rationales for the Sixth Amendment right to counsel, the *Patterson* Court imported a waiver regime that is ill suited to the purposes of that right."), *cited in* Brief for Appellant at 11-12, 16, 20. While there is no question that commentators

have been highly critical of *Patterson*'s rationale and holding, *see, e.g.*, *Sanchez*, 609 A.2d at 404 (collecting articles), again, as a matter of federal constitutional law, it is the prevailing view of the majority contingents of the Supreme Court of the United States that controls.

For purposes of Fifth Amendment jurisprudence, the Supreme Court has overtly balanced the interests of effective law enforcement against those of criminal defendants in drawing the essential boundaries. *See, e.g.*, *Montejo*, 556 U.S. at 796, 129 S. Ct. at 2091-92 (weighing the costs of according bright-line, prophylactic protections relative to interrogations); *Moran*, 475 U.S. at 426, 106 S. Ct. at 1143 (explaining that admissions of guilt resulting from *Miranda* waivers "are more than merely 'desirable,' they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law" (citation omitted)).  For example, in *Moran*, the Supreme Court said that, while it would have been useful for police to advise a suspect that an attorney was attempting to intervene on his behalf, "we have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Id.* at 422, 106 S. Ct. at 1141.  Moreover, in light of *Patterson*'s recognition of a general overlap in the rights under *Miranda* and the Sixth Amendment pertaining to post-indictment interrogation, such balancing has effectively been imported, to a substantial degree, into the Sixth Amendment arena.[8]

---

[8] We recognize that the *Moran* Court engaged in a separate Sixth Amendment analysis tied to the fact that the defendant's Sixth Amendment right had not yet attached in the matter.  *See Moran*, 475 U.S. at 428-32, 106 S. Ct. at 1144-47.  And the *Patterson* majority depicted the *Moran* paradigm (*i.e.*, a scenario in which a suspect wasn't told that a lawyer was attempting to reach him during questioning) as an exception to the general rule accepting *Miranda* waivers as sufficient for Sixth Amendment purposes.  *See Patterson*, 487 U.S. at 296 n.9, 108 S. Ct. at 2397 n.9.

Significantly, the Supreme Court of the United States has viewed the federal Constitution as manifesting a tolerance for a range of tactics in police-citizen interactions that fall short of overt coercion, subject to the procurement of a valid *Miranda* waiver in custodial settings.[9] Along these lines, the decisions have depicted a "fine line between legitimate efforts to elicit admissions and constitutionally impermissible compulsion." *Moran*, 475 U.S. at 426, 106 S. Ct. at 1143 (citation omitted). While this Court may take a different view when presented with an analogous claim under the Pennsylvania Constitution, we simply are not free to do so here.

In light of the above, for purposes of the Sixth Amendment, we apply the judgment of the Supreme Court of the United States that, "[s]o long as the accused is made aware of the 'dangers and disadvantages of self-representation' during postindictment questioning, by use of the *Miranda* warnings, his waiver of his Sixth Amendment right to counsel at such questioning is 'knowing and intelligent.'" *Patterson*, 487 U.S. at 300, 108

---

Nevertheless, it is difficult if not impossible to apprehend *Patterson*'s approach of generally adjudging the efficacy of a waiver of the right to counsel for Sixth Amendment purposes according to standards arising under *Miranda*, in the context of post-indictment interrogation, as an analysis separate and apart from the Supreme Court's balancing approach associated with *Miranda* waivers. *Accord* Primus*, Disentangling Miranda and Massiah*, 97 B.U.L. Rᴇᴠ. at 1114 (explaining that, in *Patterson* and *Montejo*, "the Supreme Court has already conflated Fifth and Sixth Amendment doctrine in the context of warnings and waiver").

[9] *See, e.g.*, *Moran*, 475 U.S. at 423-24, 106 S. Ct. at 1142 ("Granting that the 'deliberate or reckless' withholding of information is objectionable as a matter of ethics, such conduct is only relevant to the constitutional validity of a waiver if it deprives a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them."); *cf. Commonwealth v. Au*, 615 Pa. 330, 338-39, 42 A.3d 1002, 1008 (2012) (explaining that, in the Fourth Amendment context, the Supreme Court of the United States "has settled on an approach allocating very modest weight to the possibility of psychological coercion arising from a fairly wide range of police conduct which may be regarded as being appropriate and inherent in the circumstances facilitating the interaction").

S. Ct. at 2399. While there are exceptional circumstances in which a *Miranda* waiver will not be effective for Sixth Amendment purposes, *see id.* at 296 n.8, 108 S. Ct. at 2397 n.8, we hold that there is no *per se* rule, arising under this amendment, invalidating such a waiver merely because an arrestee was not advised that charges had been filed.

The order of the Superior Court is affirmed.

Chief Justice Baer and Justices Todd, Donohue and Mundy join the opinion.

Justices Dougherty and Wecht file dissenting opinions.