JUSTICE ALBIN, dissenting.
This Court granted certification to decide whether the police secured a confession in violation of defendant's right against self-incrimination. The majority, however, dodges answering the question whether the State proved that defendant validly waived his **331 Miranda rights. The majority laments the poor police practice that evidently did not establish whether defendant had a full understanding of those rights. The majority also makes repeated concessions that logically lead to the inescapable conclusion that the State failed to prove beyond a reasonable doubt that defendant made a knowing, intelligent, and voluntary waiver of his rights.
Instead of answering the critical question of whether the police elicited the confession by impermissible means, the majority takes a shortcut by assuming that the confession was wrongly admitted into evidence. It then engages in an analysis at odds with our jurisprudence and declares that wrongly admitting the confession -- the most damning piece of evidence entered at trial -- was harmless error, an error that could not possibly have altered the verdict. In straining to uphold the verdict, the majority downplays the power of defendant's audio-recorded confession, which the jury twice asked to be replayed during its four days of deliberations; overvalues the credibility of the State's key witness, a desperate informant who had multiple criminal charges pending that could have landed him in prison for decades but whose cooperation with the State earned him a probationary sentence; and exaggerates the strength of the State's case, which resulted in the jury hanging on most of the counts in the indictment.
The use of the harmless error doctrine in this fashion cannot be reconciled with our jurisprudence. It renders ineffectual the exclusionary rule and reduces the right against self-incrimination to a form of words. It suggests that upholding a conviction is more important than upholding constitutional rights.
I dissent because the record is clear that the State did not prove a valid waiver of rights. I dissent because our case law and the facts of this case tell us that defendant's unconstitutionally elicited confession does not satisfy the harmless error doctrine.
I.
The State bears the burden of proving beyond a reasonable doubt that a defendant made a knowing, intelligent, and voluntary **332 waiver of his Miranda rights before the commencement of a custodial interrogation. State v. Presha, 163 N.J. 304, 313, 748 A.2d 1108 (2000) ; see also Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[1] To prove that a defendant waived his Miranda rights -- either explicitly or implicitly *889 -- the prosecution must show that the defendant "understood" his rights before waiving them. Berghuis v. Thompkins, 560 U.S. 370, 383-84, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010) ; see also North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) (noting that a waiver of Miranda rights need not be explicit but may be implied through "the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver" (emphasis added)). Showing "that a Miranda warning was given and the accused made an uncoerced statement ... standing alone, is insufficient to demonstrate 'a valid waiver' of Miranda rights." Berghuis, 560 U.S. at 384, 130 S.Ct. 2250 (quoting Miranda, 384 U.S. at 475, 86 S.Ct. 1602 ). But that is exactly what occurred here.
The State did not establish that defendant understood his rights before waiving them. The State merely showed that the interrogating officer read the Miranda rights to defendant, who then signed a card confirming that the officer had done so. At no point did the officer take any steps to ensure that defendant understood the rights read to him. The officer admitted that he did not ask defendant whether he understood his rights or even ask him to read the rights aloud.[2] Significantly, the officer did not ask defendant whether he waived his rights, evidently because the Miranda rights card did not have a waiver-of-rights provision. Without **333 elaboration, the officer directed defendant to sign the back of the card -- "[j]ust sign here that I read you your rights" -- and advised him that "[b]y signing [the Miranda card] you are not admitting you're guilty or anything [it's] just that I read you your rights." The officer wrongly assumed that because defendant continued to speak, he must have understood his rights and therefore knowingly, intelligently, and voluntarily waived them.
The majority essentially agrees with this recitation. The majority acknowledges that the Miranda rights card "did not guide an interrogating officer ... to ensure that the suspect had waived those rights before questioning began," ante at 318, 209 A.3d at 880; that "the Miranda card used in this case invited an incomplete inquiry on the question of waiver," ante at 318, 209 A.3d at 881; and that "the card ambiguously stated that by signing, the suspect acknowledged that he or she had been 'advised of the constitutional rights found on the reverse side of this card,' " ibid. In light of those admissions, the majority's concession that "the Miranda card used by the New Jersey State Police investigators does not reflect optimal law-enforcement practice" is an understatement. See ante at 318, 209 A.3d at 880. Complying with Miranda is not burdensome. Indeed, some law enforcement agencies include on the Miranda form a question, "Do you understand?" and a waiver-of-rights provision. See, e.g., State v. A.M., 237 N.J. 384, 390, 205 A.3d 213 (2019) (discussing a Miranda form prepared by the Bergen County Prosecutor's Office).
The Miranda waiver issue is not "a close question," as the majority apparently believes, and even if it were, the State has not satisfied its heavy burden of proving a knowing, intelligent, and voluntary waiver of rights beyond a reasonable doubt. Sidestepping the issue, as the majority does, deprives the bench, bar, and law enforcement of the clarity needed in this area of the law. In short, I would hold that the State's failure to prove beyond a reasonable *890 doubt that defendant knowingly, intelligently, and voluntarily waived his rights requires the suppression of his confession. **334 II.
A.
In New Jersey, the admission of an unconstitutionally secured confession is rarely found to be harmless error.[3] That is because "[a] confession is like no other evidence." See Arizona v. Fulminante, 499 U.S. 279, 296, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The United States Supreme Court has explained that
the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.... [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so. While some statements by a defendant may concern isolated aspects of the crime or may be incriminating only when linked to other evidence, a full confession in which the defendant discloses the motive for and means of the crime may tempt the jury to rely upon that evidence alone in reaching its decision.
[ Ibid. (alterations in original) (internal citations and quotation marks omitted).]
When such powerful evidence touching on a defendant's substantial rights is erroneously entered into evidence, the burden is **335 on the State to prove that the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 23-24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ; see also State v. Macon, 57 N.J. 325, 340-41, 273 A.2d 1 (1971) (adopting the standard set forth in Chapman ). "The test for determining whether an error is harmless 'is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " State v. Sanchez, 129 N.J. 261, 278, 609 A.2d 400 (1992) (emphasis added) (quoting Chapman, 386 U.S. at 23, 87 S.Ct. 824 ). Thus, the State has to establish beyond a reasonable doubt that there was no "reasonable possibility" that the wrongly admitted confession "might have contributed to [his] conviction." See ibid. That conclusion cannot be reached here.
This Court has held that "certain constitutional errors so impugn the integrity of *891 our system of justice that any doubts about their prejudice to the defendant must be resolved against the State, which seeks the benefits of its constitutional wrongdoing." State v. McCloskey, 90 N.J. 18, 30, 446 A.2d 1201 (1982). One such constitutional error is the admission of an unlawfully elicited confession. Id. at 30-31, 446 A.2d 1201.
There are "two important reasons for applying harmless error doctrine sparingly" when the State violates a "defendant's privilege against self-incrimination." Id. at 31, 446 A.2d 1201. First, the protection that the privilege affords in "our accusatory system of justice requires us to guard carefully against its infringement." Ibid. "Second, the improper use of incriminating statements made by a criminal defendant has great potential for prejudice." Ibid.; see also Fulminante, 499 U.S. at 296, 111 S.Ct. 1246. The underlying judicial assumption is "that inculpatory remarks by a defendant have a tendency to resolve jurors' doubts about a defendant's guilt to his detriment" and that the credibility of eyewitness testimony is bolstered by a defendant's confession. McCloskey, 90 N.J. at 31, 446 A.2d 1201.
The ultimate question is not whether the State presented "sufficient evidence" for a reasonable jury to convict a defendant, **336 "absent the unlawfully obtained statements." See id. at 32, 446 A.2d 1201. Rather, the question is whether the Court is "able to declare a belief that [the error] was harmless beyond a reasonable doubt." Ibid. (alteration in original) (quoting Chapman, 386 U.S. at 24, 87 S.Ct. 824 ).
Three cases illustrate how sparingly this Court has found the admission of an unlawfully elicited confession to constitute harmless error. In State v. Johnson, the defendant was convicted of the brutal and heinous murders of a husband and wife in their home, based on evidence that included the defendant's confession. 120 N.J. 263, 267, 273, 576 A.2d 834 (1990). The defendant had admitted to the murders after a prolonged custodial interrogation. Id. at 271-73, 284, 576 A.2d 834. This Court, however, determined that the defendant's confession was obtained in violation of his Fifth Amendment right against self-incrimination. Id. at 284, 576 A.2d 834. In engaging in the harmless error analysis, this Court "acknowledge[d] that that evidence of defendant's guilt [was] persuasive." Id. at 291, 576 A.2d 834.[4] The Court nevertheless concluded that despite "the substantial evidence of guilt, ... the improper admission of defendant's confession 'impact[ed] substantially and directly' on the fundamental procedural right to remain silent, and is 'not amenable to harmless error rehabilitation.' " Ibid. (second alteration in original) (quoting State v. Czachor, 82 N.J. 392, 404, 413 A.2d 593 (1980) ). Because "[d]efendant's confession was so powerful and so damaging to his defense," the Court refused to speculate whether the remaining evidence would have been sufficient to convict "had the confession been properly excluded." Id. at 291-92, 576 A.2d 834. It therefore concluded that the admission of the confession was "sufficient to raise a reasonable **337 doubt as to whether the error led the jury to a result it otherwise might not have *892 reached." Id. at 292, 576 A.2d 834 (quoting Czachor, 82 N.J. at 402, 413 A.2d 593 ).
In State v. McCloskey, a jury convicted the defendant of murder and related weapons offenses, based on evidence that included the defendant's confession. 90 N.J. at 18, 20, 446 A.2d 1201. That confession, this Court concluded, was elicited in violation of the defendant's Fifth Amendment right against self-incrimination because the interrogating officer did not honor his invocation of his right to counsel. Id. at 27-29, 446 A.2d 1201. The Court then engaged in a harmless error analysis. Id. at 30-32, 446 A.2d 1201.
The Court conceded that even without the defendant's confession, "the State ha[d] sufficient evidence so that a reasonable jury might convict him." Id. at 32, 446 A.2d 1201. But that is not the test for determining whether the erroneous admission of a confession is harmless. The true test for determining whether the wrongful admission of a confession requires reversal of a conviction "depends finally upon some degree of possibility that it led to an unjust verdict." Id. at 30, 446 A.2d 1201 (quoting Macon, 57 N.J. at 335, 273 A.2d 1 ). With that test in mind, the Court held that it was "not 'able to declare a belief that [the error] was harmless beyond a reasonable doubt' " and reversed the defendant's conviction. Id. at 32, 446 A.2d 1201 (alteration in original) (quoting Chapman, 386 U.S. at 24, 87 S.Ct. 824 ). In reaching that conclusion, the Court repeated its warning from an earlier case about the danger of the "overuse of the 'harmless error' doctrine." Id. at 30, 446 A.2d 1201 (citing Czachor, 82 N.J. at 404, 413 A.2d 593 ). It further noted that "[e]rrors impacting directly upon ... sensitive areas of a criminal trial are poor candidates for rehabilitation under the harmless error philosophy" and therefore "the rule of harmless error should be summoned only with great caution in dealing with the breach of fundamental procedural safeguards 'designed to assure a fair trial.' " Id. at 30, 446 A.2d 1201 (second alteration in original) (quoting State v. Simon, 79 N.J. 191, 206, 398 A.2d 861 (1979) (citations omitted)).
**338 In State v. Sanchez, the "stringent standard" for harmless error set forth in Chapman -- "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" -- also led the Court to reverse a murder conviction because of the wrongful admission of the defendant's confession. 129 N.J. at 278, 609 A.2d 400 (quoting Chapman, 386 U.S. at 23, 87 S.Ct. 824 ). Despite the State's "evidence of defendant's guilt [that] flowed overwhelmingly from the eyewitnesses' accounts of the murder," the Court nevertheless was "left uncertain whether the error may have contributed to defendant's conviction" and therefore was compelled to grant a new trial. Ibid.
Even under Chapman's "stringent standard," harmless error will be found in some rare cases involving the erroneous admission of a confession. Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972), is one example, but even there the United States Supreme Court was sharply split. In Milton, a Florida jury convicted the defendant of murder based on evidence that included four full confessions. Id. at 372-73, 92 S.Ct. 2174. On appeal from the denial of his petition for habeas corpus, the Supreme Court considered the defendant's challenge only to his fourth confession, which was "essentially the same as" his three prior confessions. Id. at 375-77, 92 S.Ct. 2174. The fourth confession was made to a police officer, posing as a prisoner in a jail cell, after the defendant was indicted and represented by counsel. Id. at 372, 92 S.Ct. 2174. The Court assumed that the fourth confession *893 should have been excluded but concluded that its admission was harmless beyond a reasonable doubt. Ibid. The Court reached that conclusion because "[t]he jury ... was presented with overwhelming evidence of petitioner's guilt, including no less than three full confessions that were made by petitioner prior to his indictment." Id. at 372-73, 92 S.Ct. 2174 (emphasis added). Even so, three members of Court joined Justice Stewart's dissenting opinion, which chided the majority for refusing "to rule on the constitutional question squarely presented" and which maintained that "[s]urely there is at the least a reasonable doubt whether" the erroneously admitted **339 testimony of the police officer posing as a cellmate contributed to the verdict. Id. at 384, 92 S.Ct. 2174 (Stewart, J., dissenting).[5]
Unless we discard more than three decades of our jurisprudence, the facts before us do not allow a finding that the erroneous admission of defendant's confession is harmless beyond a reasonable doubt. Put more precisely, the State has failed to prove that there is no "reasonable possibility that the evidence complained of might have contributed to the conviction." Sanchez, 129 N.J. at 278, 609 A.2d 400 (quoting Chapman, 386 U.S. at 23, 87 S.Ct. 824 ).
B.
During the interrogation by Detective Ribeiro, defendant confessed to selling guns to the State's informant, a cooperating witness who had multiple pending charges against him. In his confession, defendant acknowledged that he set up the gun sales and earned one hundred dollars for each transaction. The confession encompassed significant details about the April 3 transaction that aided the State in convicting him of that offense, details such as "the difficulty that he encountered paying the unidentified individual who supplied the weapon, and the modest profit that he made on the sale." Ante at 307, 209 A.3d at 874
With the confession, the State not only had admissions of guilt from the lips of defendant, but also had evidence to corroborate its informant, the spotty audio-recordings of the gun transactions, and the surveillance. Corroborating the credibility of the testifying informant was the key to the State's case. As a cooperating **340 witness, the informant had a strong incentive to bring in defendant in exchange for bringing down his jail exposure on the multiple criminal charges pending against him. At the time of his cooperation with the police, the informant -- who had a prior criminal record -- faced seven counts of burglary and one count of attempted burglary in Bergen County, exposing him to a potential forty-year prison term, and three counts of burglary and one count for criminal mischief in Passaic County, exposing him to a potential twenty-year prison term. After defendant's arrest, the informant pled guilty to charges in Bergen and Passaic Counties and received probationary sentences. He also received cash payments every time he presented the police with a purchased gun.
Jurors are charged that they may consider a cooperating witness's "special interest *894 in the outcome of the case" and whether his testimony was "influenced by the hope or expectation of any favorable treatment or reward." Model Jury Charges (Criminal), "Testimony of a Cooperating Co-Defendant or Witness" (rev. Feb. 6, 2006); see also State v. Adams, 194 N.J. 186, 207-08, 943 A.2d 851 (2008). One can reasonably surmise that the informant's credibility was on shaky grounds because the jury hung on all counts related to four of the five gun transactions. The majority improperly assumes that the jury would have accepted his testimony as credible, even without defendant's corroborating confession. See McCloskey, 90 N.J. at 31, 446 A.2d 1201 ("[I]nculpatory remarks by a defendant have a tendency to resolve jurors' doubts about a defendant's guilt to his detriment" and boost the credibility of eyewitness testimony.).
The majority, moreover, does not take account of the four days of jury deliberations; instead it makes its own factfinding determination that the evidence against defendant in the April 3 gun transaction "was overwhelming." The "overwhelming" evidence standard used by the majority, however, is not a substitute for the harmless error standard.
We do not have to speculate about the importance of defendant's confession to the State in presenting its case or to the jury **341 in deliberating toward a verdict. During summation, the prosecutor reminded the jury to consider defendant's own admissions. During its four days of deliberation, the jury asked twice for defendant's audio-recorded confession to be replayed. For harmless error purposes, the issue is not whether the State presented sufficient evidence to convict on the April 3 gun transaction. The jury had sufficient evidence to convict on all five gun-sale transactions, even without defendant's confession, if it chose to credit the State's witnesses and evidence. But "confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so." Fulminante, 499 U.S. at 296, 111 S.Ct. 1246.
As a result of the erroneous admission of illicitly secured confessions, this Court reversed murder convictions in Johnson, despite "substantial evidence of guilt," 120 N.J. at 267, 291-92, 576 A.2d 834, and a murder conviction in McCloskey, despite "sufficient evidence" to convict, 90 N.J. at 20, 32, 446 A.2d 1201 ; see also Sanchez, 129 N.J. at 278-79, 609 A.2d 400. Our Court granted new trials under the Chapman / Macon harmless error standard because of the "reasonable possibility" that the unlawful confessions "might have contributed to the conviction." Sanchez, 129 N.J. at 278-79, 609 A.2d 400 (quoting Chapman, 386 U.S. at 23, 87 S.Ct. 824 ); see also McCloskey, 90 N.J. at 30, 32, 446 A.2d 1201 ; Johnson, 120 N.J. at 291-92, 576 A.2d 834 (applying Macon to hold the confession was "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached" (quoting Czachor, 82 N.J. at 402, 413 A.2d 593 )). So long as there is "some degree of possibility that [a wrongly admitted confession] led to an unjust verdict," this Court is constrained to reverse. See McCloskey, 90 N.J. at 30, 446 A.2d 1201 (quoting Macon, 57 N.J. at 335, 273 A.2d 1 ).
III.
This Court has cautioned about the "overuse of the 'harmless error' doctrine" because of its capacity to undermine the primacy **342 of the jury as the ultimate factfinder in our system of criminal justice. See ibid. To conclude that there was not some degree of possibility that defendant's confession -- the "most knowledgeable and *895 unimpeachable source of information," Fulminante, 499 U.S. at 296, 111 S.Ct. 1246 -- might have contributed to the jury's verdict requires a disregard of not only a whole body of jurisprudence, but also the flaws in the State's case that led the jury to hang on most of the charges. To be clear, the failure to reverse defendant's conviction violates the federal harmless error standard, see Chapman, 386 U.S. at 24, 87 S.Ct. 824, and therefore the Fifth Amendment.
Our jurisprudence teaches us that eroding a fundamental constitutional right is too high a price to pay for saving a conviction. The majority has chosen not to heed that lesson. In the end, the State did not prove that the admission of defendant's confession was harmless beyond a reasonable doubt.
I therefore respectfully dissent.

Federal law only requires prosecutors to prove by a preponderance of the evidence that a suspect's waiver of rights was knowing, intelligent, and voluntary. See Colorado v. Connelly, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

When asked if he witnessed Tillery read the Miranda card, the officer testified that Tillery took possession of it and looked at it in silence; the officer did not confirm whether Tillery read it to himself before signing it.

See, e.g., State v. Wint, 236 N.J. 174, 205-06, 198 A.3d 963 (2018) (remanding for a new trial because the erroneous admission of the defendant's statement that he "committed a murder in Camden" was "clearly capable of causing an unjust result"); State v. Maltese, 222 N.J. 525, 549-50, 120 A.3d 197 (2015) (remanding for a new trial when the defendant's convictions were "substantially dependent upon defendant's statement to police" which had been improperly admitted); State in re A.S., 203 N.J. 131, 153, 999 A.2d 1136 (2010) (remanding for a new trial since the Court could not "say that there was no reasonable possibility that [the confession's improper] introduction into evidence contributed to the delinquency adjudication"); State v. O'Neill, 193 N.J. 148, 184, 936 A.2d 438 (2007) (reversing the defendant's conviction "[g]iven the centrality of defendant's [erroneously admitted] incriminating statements to the prosecution's case"); State v. Pillar, 359 N.J. Super. 249, 279-80, 820 A.2d 1 (App. Div. 2003) (refusing to find the erroneous admission of the defendant's confession harmless despite "overwhelming untainted evidence of defendant's guilt" because his "admission likely played a part in his conviction"). But see State v. Shelton, 344 N.J. Super. 505, 517-18, 782 A.2d 941 (App. Div. 2001) (determining the erroneous admission of the defendant's written confession was harmless because the defendant's oral confession was properly admitted and "both the oral and written statements were the same in terms of inculpating defendant").

The evidence of the defendant's guilt included testimony that his friends encountered him on the day of the murder "smeared with blood" and that he was seen riding a bike near the murder scene. Id. at 291, 576 A.2d 834. The State also presented forensic evidence that "a footprint found at the scene matched defendant's sneaker" and that "blood found on defendant's sneaker lace appeared to match that of the victim." Ibid. The jury also heard testimony that the defendant possessed jewelry stolen from the home. Ibid.

Another rare case is State v. O'Neal, 190 N.J. 601, 606-07, 921 A.2d 1079 (2007), where police officers made a custodial stop of the defendant after witnessing him engage in a drug transaction. Without administering Miranda warnings, the officers asked him what was in his bulging sock, to which he replied, "cocaine." Id. at 607, 921 A.2d 1079. Although the defendant's statement should have been suppressed at trial for the Miranda violation, we found the error harmless because "[t]he police had probable cause to search and arrest defendant prior to asking the offending question and would have discovered the cocaine when they searched the sock." Id. at 616, 921 A.2d 1079.